**IN THE COURT OF APPEALS OF IOWA**

No. 14-0334
Filed March 25, 2015


**IN RE THE MARRIAGE OF BRIAN WITHERLY
AND MAURA WITHERLY**

**Upon the Petition of
BRIAN WITHERLY,**
        Petitioner-Appellant/Cross-Appellee,

**And Concerning
MAURA WITHERLY,**
        Respondent-Appellee/Cross-Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Robert B. Hanson,

Judge.


        The parties appeal and cross-appeal from the district court decree

dissolving their marriage. **AFFIRMED AS MODIFIED.**


        Christopher B. Coppola of Coppola, McConville, Coppola, Carroll,

Hockenberg & Scalise, P.C., West Des Moines, for appellant.

        Kodi A. Brotherson of Babich Goldman, P.C., Des Moines, for appellee.


        Heard by Vaitheswaran, P.J., and Tabor and Mullins, JJ.

**VAITHESWARAN, P.J.**

Brian Witherly appeals and Maura Witherly cross-appeals from the spousal support and tax filing provisions of a dissolution decree. Brian contends the district court's rehabilitative alimony award is inconsistent with its stated purpose. Maura asserts the district court should not have required her to file joint income tax returns with Brian for the 2012 and 2013 tax years.

## I.    *Background Facts and Proceedings*

Brian and Maura Witherly married in 1996 and divorced in late 2013. At the time of trial, Brian was 48 and Maura was 49; both were in good health. Prior to the marriage, both took college classes in business computer systems. Brian completed college and worked in the field during the marriage. He earned as much as $237,000 annually. At the time of trial, his wages were $158,000 per year with the possibility of a 15% annual bonus.

Maura was one credit shy of completing college. She had no education after 1986. While she worked for ten years before the marriage, she agreed to defer earning wages after the marriage. She served as primary caretaker for her child from a previous relationship, as well as the two children of the marriage, and performed most of the work in and around the home. On her separation from Brian in 2012, she began earning $10 per hour at a twenty-five-hour-per week job.

The district court ordered Brian to pay Maura spousal support of $2600 per month until she remarried or turned sixty-five or either party died. The court labeled the award "rehabilitative." The court also ordered Maura to "cooperate

fully with [Brian] and his tax preparer for purposes of filing jointly the parties 2012 and 2013 federal and state income tax returns."

Brian and Maura each filed rule 1.904(2) motions requesting reconsideration of the court's provisions on spousal support and the tax returns. The district court denied the motions. The appeal and cross-appeal followed.

## II.    Analysis

### A.  Spousal Support

In awarding Maura $2600 per month until she turned sixty-five, the district court reasoned as follows:

> Even with an equal distribution of the marital estate, Maura leaves this marriage at a substantial economic disadvantage. That economic disadvantage relates primarily to the great disparity in earning capacity between the parties. The parties' election at the commencement of their marriage to have Maura essentially forgo her career in favor of becoming the primary homemaker and child rearer has negated much of her earning capacity. Even accepting Brian's proposition that, at the inception of their marriage, the parties' earning capacities were essentially equal, 17 years out of the workforce has, in the court's view, caused Maura to forfeit much of her earning capacity. With additional education and training, she can probably recover some of said capacity and perhaps enough to resume the lifestyle approximating the one she was accustomed to during the marriage which is likely a comfortable but not a lavish one. But, that will take time, particularly in the current economic climate, and so an award of rehabilitative alimony is in order.

In its order on the motions to reconsider, the court acknowledged the award "could have been more accurately characterized." The court nonetheless reaffirmed the amount and duration of the award. In doing so, the court stated it "remain[ed] convinced that is fair and equitable in both its amount and its duration." The court continued,

> If [Maura] is satisfied with the lifestyle she can afford on her share
> of the marital estate coupled with a gross income of approximately

$45,000 a year until she turns 65 (assuming she doesn't remarry or she or petitioner don't expire in the meantime), then so be it. Considering the contributions to the marriage, she is entitled to at least that much, in the court's view.

Brian asserts the district court's award "is in substance, if not in name, an award of permanent or traditional alimony contrary to the district court's own conclusion of law." He does not specify an amount or duration he desires but simply asks this court to "amend the rehabilitative alimony award by reducing it in both duration and amount."

Our review of the spousal support award is de novo but we afford the district court considerable latitude in making a spousal support determination and "[w]e will disturb that determination only when there has been a failure to do equity." *In re Marriage of Anliker*, 694 N.W.2d 535, 540 (Iowa 2005).

We begin with a red herring—the moniker assigned to the spousal support award. We have categorized spousal support as traditional, rehabilitative or reimbursement alimony. *Id.* But, these types are not mutually exclusive. *See In re Marriage of Becker*, 756 N.W.2d 822, 827 (Iowa 2008) (noting award was not strictly rehabilitative or traditional and "nothing in our case law . . . requires us, or any other court in this state, to award only one type of support."); *accord In re Marriage of Gust*, 858 N.W.2d 402, 408 (Iowa 2015) (noting categories of spousal support might "overlap" in some cases). For example, in *Becker*, the Iowa Supreme Court crafted a spousal support award incorporating the purposes behind traditional and rehabilitative alimony. The recipient was awarded $8000 per month for three years to allow her to return to school. After the third year,

she was awarded $5000 per month for seven additional years to give her time to develop her earning capacity. *Becker*, 756 N.W.2d at 827.

The district court in this case did something similar. The court pegged the award to self-sufficiency and imposed a definite end. These are hallmarks of rehabilitative alimony. *See Becker*, 756 N.W.2d at 826; *In re Marriage of O'Rourke*, 547 N.W.2d 864, 866-67 (Iowa Ct. App. 1996) (stating rehabilitative alimony allows a former spouse to become self-sufficient); *see also Gust*, 858 N.W.2d at 408 (noting traditional award is generally of unlimited duration). The court also noted the large disparity in earning capacities and explained the purpose of the award was to afford Maura a comparable lifestyle to the one she experienced during the marriage. These are hallmarks of a traditional alimony award. *See Gust*, 858 N.W.2d at 408; *In re Marriage of Hettinga*, 574 N.W.2d 920, 922 (Iowa Ct. App. 1997) ("The purpose of a traditional or permanent alimony award is to provide the receiving spouse with support comparable to what he or she would receive if the marriage continued."). The district court acted well within its authority in awarding both types of alimony. Accordingly, we are not persuaded by Brian's reliance on the title of the spousal support award.

We turn to the propriety of the amount and duration of the award. On this score, we look to the statutory spousal support factors set forth in Iowa Code section 598.21A (2013).[1] While this multi-factored test has been subject to

---

[1] The factors to be considered under section 598.21A are:
   a. The length of the marriage.
   b. The age and physical and emotional health of the parties.
   c. The distribution of property made pursuant to section 598.21.
   d. The educational level of each party at the time of marriage and at the time the action is commenced.

criticism as too arbitrary, the Iowa Supreme Court recently reiterated our obligation to follow it in the absence of legislation adopting a different standard. *Gust*, 858 N.W.2d at 410.

The marriage was seventeen years long—not long enough to trigger the unlimited spousal support duration recommended by the American Academy of Matrimonial Lawyers, but by no means short. *See Gust*, 858 N.W.2d at 416 n. 2 (discussing Mary Kay Kisthardt, *Re-thinking Alimony: The AAML's Considerations for Calculating Alimony, Spousal Support, or Maintenance*, 21 J. Am. Acad. Matrim. Law. 61, App. A (2008)); *In re Marriage of Schenkelberg*, 824 N.W.2d 481, 486 (Iowa 2012) (affirming traditional alimony award following sixteen-year marriage); *In re Marriage of Schachtner*, No. 08-1417, 2009 WL 2170240, at *3 (Iowa Ct. App. July 22, 2009) (awarding traditional alimony for seventeen-year marriage). The age and health of the parties was essentially in equipoise. As for the property division, the district court evenly divided funds accumulated in certain pension-style accounts and gave Maura a $68,000

---

e. The earning capacity of the party seeking maintenance, including educational background, training, employment skills, work experience, length of absence from the job market, responsibilities for children under either an award of custody or physical care, and the time and expense necessary to acquire sufficient education or training to enable the party to find appropriate employment.
f. The feasibility of the party seeking maintenance becoming self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and the length of time necessary to achieve this goal.
g. The tax consequences to each party.
h. Any mutual agreement made by the parties concerning financial or service contributions by one party with the expectation of future reciprocation or compensation by the other party.
i. The provisions of an antenuptial agreement.
j. Other factors the court may determine to be relevant in an individual case.

equalizing payment, all of which left Maura with some security in retirement. Nonetheless, her computer experience was obsolete and her earnings at the time of trial were less than one-tenth than Brian's earnings. There was scant evidence she could become self-supporting in the near term and there was even less evidence she could become self-supporting at a standard enjoyed during the marriage. As the district court noted, her earnings together with spousal support of $2600 gave her an annual income of $45,000, still less than one-third than Brian earned.

That said, the district court correctly found Maura had the ability to recover some of her earning capacity with additional education and training. Given her age and good health, she could look forward to at least fifteen wage-earning years. Under these circumstances, we believe Maura did not require $2600 for sixteen years. We modify the spousal support award to afford her $2600 per month for five years and $1300 per month thereafter until she turns sixty-five, remarries, or either party dies. We decline to modify the duration of the spousal support award given the significant disparity in the parties' earning capacity, the obsolescence of Maura's education, and her lack of earnings for a significant portion of the marriage.

### B. Tax Returns

As noted, the district court ordered the parties to file their 2012 and 2013 tax returns jointly. On cross-appeal, Maura takes issue with this portion of the decree.[2]

---

[2] Contrary to Brian's assertion, this issue was preserved for our review.

### *(1) 2012 Tax Return*

Maura contends the district court acted inequitably in requiring her to cooperate with Brian in filing a joint tax return for the 2012 taxable year. We disagree.

The district court was authorized to consider the tax consequences to the parties. *See* Iowa Code § 598.21A(g). Here, the consequences were significant. The district court found the parties filed separate income tax returns for the 2012 tax year but if they amended the returns to file jointly, "they could save approximately $16,000." This finding is supported by the record.

Significantly, the Iowa Supreme Court has affirmed the concept that "neither party should have sole discretion with regard to tax filings after separation because the filings might adversely affect the other party." *See In re Marriage of Muelhaupt*, 439 N.W.2d 656, 662 (Iowa 1989); *but see In re Butler*, 346 N.W.2d 45, 47 (Iowa Ct. App. 1984) ("Since the taxation laws give the parties an option of filing a joint or separate return, the trial court should not have compelled them to file jointly.") *overruled on other grounds by In re Marriage of Hoffman*, 493 N.W.2d 84, 89 (Iowa Ct. App. 1992). Maura refused to file a joint return for the 2012 tax year. She explained her reasons for the refusal as follows: "I have done it for the FAFSA for my daughter to go to college, the one that he refuses to pay any assistance towards college. I also refused to pay it because I don't trust him." Without commenting on the cogency of these reasons, the district court found Brian was "picking up the whole tab" and it seemed "only fair" that Maura "be required to do everything in her power to make that tab as small as possible." The court acted well within its authority in

declining to let Maura control the method of filing the tax return. *See Bowen v. Bowen*, 725 N.E.2d 1165, 1179 (Ohio Ct. App. 1999) (holding court has authority to order parties to amend filings and file jointly as part of property distribution); *Kimsey v. Kimsey*, 965 S.W.2d 690, 696 (Tex. Ct. App. 1998) (requiring specification of whether parties should file joint tax returns for years preceding divorce).

### (2) 2013 Tax Return

Maura also contends the district court acted inequitably in requiring her to file a joint tax return for the 2013 tax year. She notes the parties were divorced by the close of the 2013 tax year.

Maura is correct. Generally, parties are "married" for taxation purposes if their marriage has yet to be dissolved as of the close of the tax year. *See* 26 U.S.C. § 7703(a);[3] s*ee also* Treas. Reg. § 1.7703-1(a) (1997); Iowa Admin. Code r. 701-39.4(2)(b). The dissolution decree was filed on November 19, 2013. The parties were divorced as of this date. *See In re Marriage of Keith*, 513 N.W.2d 769, 771 (Iowa Ct. App.1994) ("The final decree is the one in which the marriage is terminated."); *see also In re Marriage of Okland*, 699 N.W.2d 260, 265 (Iowa 2005) (reiterating denial of timely postjudgment motion leaves original judgment in effect); *In re Marriage of Groth*, No. 11-0200, 2011 WL 5460827, at *2, 4 (Iowa Ct. App. Nov. 9, 2011) (holding parties' divorce became final on date dissolution decree was entered). Accordingly, they could not file joint tax returns for the

---

[3] There is an exception for certain married individuals living apart. *See* 26 U.S.C. § 7703(b). No argument has been made that this section applies.

2013 tax year.  We modify the portion of the dissolution decree requiring a joint filing for this year.

### C.  Appellate Attorney Fees

Maura seeks to have Brian pay her appellate attorney fees and costs of the appeal.  A decision on these matters rests in our discretion.  *In re Marriage of Okland*, 699 N.W.2d at 270.  As both parties prevailed on the issues they raised, we decline the request.

### III.    Disposition

We affirm the dissolution decree in all respects except that we modify the spousal support provision to reduce the amount to $1300 after five years.  We also eliminate the obligation to file jointly for the 2013 tax year.

**AFFIRMED AS MODIFIED.**