# IN THE COURT OF APPEALS OF IOWA

No. 15-0107
Filed August 17, 2016


IN RE THE MARRIAGE OF MELISSA A. GANSEN BEAUCHAMP
AND CORY J. BEAUCHAMP

Upon the Petition of
MELISSA A. GANSEN BEAUCHAMP,
        Petitioner-Appellant,

And Concerning
CORY J. BEAUCHAMP,
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Story County, James A. McGlynn,

Judge.


        A former wife appeals financial aspects of the dissolution decree.

**AFFIRMED AS MODIFIED**.


        J.D. Hartung and Ashley A. Tollakson (until withdrawal) of Hartung &

Schroeder, Des Moines, for appellant.

        Dorothy L. Dakin of Kruse & Dakin, L.L.P., Boone, for appellee.


        Considered by Tabor, P.J., and Bower and McDonald, JJ.

**TABOR, Presiding Judge.**

Melissa (Missy) Gansen Beauchamp challenges economic provisions in the decree dissolving her sixteen-year marriage to Cory Beauchamp. Specifically, she argues the property distribution was inequitable and contends she should not have to pay spousal support. From our de novo review of the record, we disagree with the district court's finding that Missy dissipated marital assets. Accordingly, we modify the decree to require Cory to pay a portion of the family's credit card debt outstanding at the time of trial. In all other aspects, we affirm the dissolution decree.

## I. Facts and Prior Proceedings

Missy and Cory were married in 1998 and have two daughters, born in 2004 and 2009. The couple separated in 2012. Missy filed a petition for dissolution of the marriage in February 2014.

Both Missy and Cory worked outside the home throughout the marriage. While attending Iowa State University, Missy landed a "coveted internship" with Meredith Corporation. By the time of trial, she was forty-two years old and had been with the company for almost twenty years. In her job as a senior associate design director, she earned an annual salary of $87,758.

Cory was forty-four years old at the time of trial and operated motor vehicles for Iowa State University, earning just over $42,000 per year. Cory has a high school diploma. When he was younger, he completed most of the hours necessary for a degree in auto mechanics. Cory testified he enjoyed his current job, but because the tasks demanded much exertion and he had seen coworkers experience physical "breakdown over the years," he had considered pursuing a

managerial position with the university. But attaining such an advancement was a velleity; he had not actually looked into the possibility of furthering his education.

Because Missy worked in Des Moines and Cory worked in Ames, they chose to build a house in Huxley as a midway point. When the parties separated in August 2012, Missy stayed in the family home and Cory rented a residence in Slater. The Huxley house needed maintenance and repairs. Missy borrowed nearly $4000 during the separation to replace the furnace and air conditioner.

The parties entered a mediation agreement in May 2014. The agreement included a fifty-fifty temporary parenting schedule. The agreement provided neither party would pay temporary monthly support, but Missy was "solely responsible for the girls' shoes, clothing, school lunches and activities, and any other child-related expenses" not otherwise assigned in the agreement. The parties split extracurricular and daycare fees fifty-fifty.

The district court considered evidence presented at the dissolution trial on October 28-30, 2014. In the decree issued on December 17, 2014, the court awarded the parties joint legal custody and joint physical care. The court also ordered Melissa to pay $439.30 in monthly child support. The parties do not challenge the custody or child support provisions of the decree.

In deciding how to distribute the marital property, the district court discussed the parties' division of personal belongings and vehicles, before setting out the following information:

> Cory has retirement accounts with a value of approximately $145,000. Missy has a 401K with her employer with a balance of about $210,000 plus a cash balance plan with a balance of almost

$78,000. As discussed elsewhere, Missy claims a premarital contribution to her retirement plan of over $8000. Cory asserts that he brought assets into the marriage and that the parties jointly paid off Missy's student loan debt. It is difficult, if not impossible, to arrive at a precisely equal division of assets which fully factors in all of the claims and arguments made by each party.

The court then found:

[T]hose claims substantially offset each other and that a fair and equitable division of property can be accomplished by using a qualified domestic relations order to set off an appropriate amount of Missy's retirement account to Cory as set forth below and by distributing the net proceeds from the sale of the marital home as set forth below, without any further adjustment regarding personal property.

The district court ordered the parties to sell the house and equally divide the proceeds. The court also held Cory responsible for half of the installation of the new furnace and air conditioner.

The district court next discussed division of the parties' other major assets, their pensions and Missy's life insurance policy:

Since Missy earns substantially more money than Cory, her pension plan is much larger . . . . Missy asserts that the retirement accounts should not be divided equally because she should be granted credit for the portion attributed to her premarital balance . . . . The court FINDS that it is not fair and equitable to set off to Missy the portion of her pension attributed to her premarital contributions, without considering the debt she brought into the marriage and the assets Cory brought into the marriage . . . . [T]he court FINDS that to arrange a fair and equitable division of marital assets the financial assets, including Cory's Iowa State TIAA-CREFF plan, Missy's Meredith Corporation 401K, Missy's Meredith cash balance plan and the cash value of Missy's life insurance policy should be divided equally between the parties. This will result in all of Cory's pension remaining in his name and a qualified domestic relations order transferring an equalizing amount of Missy's pension to Cory.

The district court noted the parties' most significant dispute was not about assets but debts. The court commented: "The evidence shows that at the time of

the separation the parties had virtually no debt other than the mortgage on the house." The court compared that situation to the parties' debt load at the time of the dissolution trial:

> At the time of the divorce, Cory owed a few small amounts and agreed that he should be responsible for paying those amounts. However, Missy owed over $39,000 in credit card debt, over $14,000 of which had been incurred in the approximate six-month period from the mediation proceeding to the date of trial.

The court acknowledged some of the debt related to home improvements, for which Cory bore equal responsibility. But the court stressed "that still leaves over $30,000 of debt owed by Missy on a variety of credit cards." Missy urged the court to consider those to be "marital debts and counted in the division of assets." Cory objected to those debts being included in the distribution of marital property, asserting Missy had dissipated assets by incurring the credit card debt. The court sided with Cory, finding it appropriate to set aside the entire credit card debt in Missy's name, other than that incurred for the furnace and air conditioner.

On the issue of spousal support, the court ordered Missy to pay traditional alimony to Cory in the amount of $400 for five years, or until Cory dies or remarries, whichever occurred first.

Missy now appeals.

## II. Scope and Standards of Review

An action for the dissolution of marriage is an equitable proceeding. Iowa Code § 598.3 (2013). Therefore, our review is de novo. Iowa R. App. P. 6.907; *In re Marriage of Schenkelberg,* 824 N.W.2d 481, 484 (Iowa 2012). Although we give weight to the factual determinations of the district court, its findings are not binding upon us. Iowa R. App. P. 6.904(3)(g); *In re Marriage of Brown,* 776

N.W.2d 644, 647 (Iowa 2009). We examine the entire record and adjudicate anew rights on the issues properly presented. *In re Marriage of Ales,* 592 N.W.2d 698, 702 (Iowa Ct. App. 1999). We give the district court considerable discretion in awarding spousal support and will disturb its award only when the decree fails to do equity. *In re Marriage of Smith,* 573 N.W.2d 924, 926 (Iowa 1998).

## III. Analysis

### A. Property Division

In Iowa divorces, courts must achieve an equitable division of the marital property—and while an equal split is not always required, "equality is often most equitable." *In re Marriage of Fennelly*, 737 N.W.2d 97, 102 (Iowa 2007). "[D]issipation of assets is a proper consideration when dividing property." *Id.* at 104. Dissipation occurs when the conduct of one spouse during the period of separation results in the loss of property otherwise subject to division at the time of the decree. *In re Marriage of Kimbro*, 826 N.W.2d 696, 700–01 (Iowa 2013). To remedy dissipation, a court will include the lost value in the marital estate and award it to the spouse who squandered the asset. *Id.* at 701.

In this case, the district court held that Cory made "a prima facie case for dissipation and Missy has failed to rebut it." Accordingly, the court assigned Missy sole responsibility for the credit card debt of $35,160 ($39,035 total credit card balance minus $3874 balance for Carrier Visa used to buy the furnace and air conditioner). The court acknowledged Missy had more housing expenses, having remained in the marital home during the separation. But the court pointed out Missy and Cory had the children for the same amount of time and any

additional expenses Missy incurred for the girls was offset by the fact she did not pay child support as part of the temporary mediation agreement. The court also found many of the credit card expenditures—for clothing, gym memberships, and haircuts—were made for "the purpose of self-promotion" on Missy's part. The court opined: "While there is nothing evil about the efforts at self-promotion, she is the only one who can possibly benefit from those efforts and so she should be the only one held responsible for payment of those expenses."

On appeal, Missy contends she has not dissipated marital assets, rather, she has "attempted to maintain all of the family routine expenses without any contribution from Cory." The record shows Missy handled the bulk of the family's finances during the marriage. The parties deposited their respective paychecks into a joint bank account, and Missy paid the bills. When they separated in August 2012, Cory stopped depositing his check into that account and discontinued his contributions toward the marital residence or other family expenses, though he did access the joint account to fund certain purchases. Missy contends she paid all expenses related to the marital residence and the majority of the expenses related to children's day care, camps, meals, and clothing from August 2012 until May 2014, when the parties entered a mediation agreement.

We analyze the dissipation controversy in two steps. *See Fennelly*, 737 N.W.2d at 104. The first step is "an evidentiary matter and may be resolved on the basis of whether the spending spouse can show how the funds were spent or the property disposed of by testifying or producing receipts or similar evidence." *Id.* The second step requires consideration of the following factors: (1) the

8

proximity of the expenditure to the separation, (2) whether the expenditure was typically made before the breakdown of the marriage, (3) whether the expenditure benefited the marital enterprise or was for the benefit of one spouse to the exclusion of the other, and (4) the need for, and the amount of, the expenditure. *Id.* at 104-05. The question is not whether one spouse is personally responsible for a debt incurred by the other spouse, but whether the payment of the obligation was "a reasonable and expected aspect of the particular marriage." *In re Marriage of Burgess*, 568 N.W.2d 827, 829 (Iowa Ct. App. 1997).

On the first step, we find Missy satisfactorily showed how the money was spent. She offered an exhibit that amassed numerous credit card receipts, showing—among other charges—family meals at restaurants such as Arby's, McDonald's, Wendy's, Subway, Chipotle, Okoboji Grill, and Gateway Market. The receipts also documented purchases of bedding, clothing, and home décor items at stores such as Kmart, Walmart, TJ Maxx, and Target. Thus, the credit card debts were well documented. On the second step, we find the multiple factors cited in *Fennelly* support Missy's position that she did not dissipate assets. *See Fennelly*, 737 N.W.2d at 104-05. Cory testified: "There were many receipts for things that we had never spent money on before." He suggested Missy spent "a lot of money on spas" and "really expensive clothing." But he acknowledged on cross-examination he had not quantified the amount spent "exclusive only Missy as opposed to necessary family expenses."

In our review of the receipts, we could not identify any spa visits or extravagant clothing purchases. Missy did periodically pay for services at Salon

Spa W, a business in Des Moines which provides haircuts and styling services. But she testified her personal expenses did not exceed those incurred during the marriage. As for women's clothing, an example of a typical receipt showed Missy bought "Moderate Dresses" from the Von Maur department store, ranging in price from twenty dollars to forty-two dollars. In general, the hundreds of receipts in Missy's exhibit show typical purchases for a household with two young girls headed by a mother with a professional career. Cory—who did not handle the couple's finances during the marriage—did not establish the post-separation expenditures were outside the norm of the family's previous spending habits. The bulk of the credit card debt benefited the marital enterprise, in that it covered basic food, clothing, and activities for the children.

Missy accumulated approximately $39,000 in debt during the couple's lengthy separation because she was trying to maintain the same lifestyle for her daughters but working with one pay check instead of two.[1] "[T]wo households are inevitably more expensive to maintain than one." *In re Marriage of Gust*, 858 N.W.2d 402, 415 (Iowa 2015). While Missy's deficit spending was not sustainable, it did not rise to the level of dissipation. *See Kimbro*, 826 N.W.2d at 702 (rejecting dissipation claim and concluding wife's post-separation expenditures of $168,535 in eighteen months were for legitimate living expenses and consistent with the lifestyle to which she was accustomed).

Recognizing some of the expenditures exclusively benefitted Missy, we conclude $30,000 of the credit card debt owed at the time of the dissolution trial

---

[1] Missy asserts she experienced a loss of approximately $68,000 in income previously available to maintain the household and the children's living expenses during the two years Cory had been out of the marital home.

should have been subject to division between the parties. We modify the decree to hold the parties jointly responsible for those outstanding obligations. While the debts are set off to Missy, we order Cory to reimburse Missy in the amount of $15,000; he may do so in installments of $5000 paid through the clerk of court over three years without interest with the first installment due sixty days after issuance of the procedendo. Cory's next two installments are due yearly thereafter. If any installment is not paid within those deadlines, it shall bear interest at the legal rate for judgments from the due date of that payment.

Missy further contends the district court erred in refusing to offset her premarital assets valued at $9661 as separate property. We find the district court appropriately considered the assets Missy brought into the marriage—balancing them against her student loan debts paid off during the marriage and the assets brought into the marriage by Cory. The decree reaches an equitable result on the issue of premarital property, and we decline to make additional modifications.

### B. Spousal Support

One spouse has no claim of entitlement to continued economic support from the other spouse at the end of a marriage. *In re Marriage of Hansen*, 733 N.W.2d 683, 704 (Iowa 2007). The discretionary award of spousal support rides on the circumstances of each particular case. *Id.* In deciding on an award, courts look to legislatively established factors, including (1) the length of the marriage; (2) the parties' ages and their physical and emotional health; (3) the distribution of the parties' property, (4) "the educational level of the parties at the time of the marriage and at the time of the dissolution action"; (5) the earning

capacity of the party seeking support; and (6) "the feasibility of the party seeking alimony becoming self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage." *Id.*; *see* Iowa Code § 598.21A(1)(a)-(f).

Iowa law recognizes three kinds of alimony: traditional, rehabilitative, and reimbursement. *In re Marriage of Anliker,* 694 N.W.2d 535, 540 (Iowa 2005). Courts often award traditional alimony after long-term marriages where life patterns have been largely set and "the earning potential of both parties can be predicted with some reliability." *In re Marriage of Francis,* 442 N.W.2d 59, 62–63 (Iowa 1989). Rehabilitative alimony provides support for an economically dependent spouse through a limited period of re-education or retraining. *Id.* at 63. Reimbursement alimony is awarded based on "economic sacrifices made by one spouse during the marriage that directly enhance the future earning capacity of the other." *Anliker,* 694 N.W.2d at 541. A support award may be a combination of the above types. *See In re Marriage of Becker*, 756 N.W.2d 822, 827 (Iowa 2008).

Here, Cory sought $1000 per month in alimony. Missy asked the district court to deny Cory's request, arguing he was not economically dependent upon her. The district court found Cory had not "established a claim for either rehabilitative or reimbursement alimony." But the court ordered Missy to pay traditional alimony in the amount of $400 per month for five years. The court reasoned that Missy earned twice as much money as Cory per year and had greater potential for advancing her career. In limiting the amount and duration of the award, the court considered that Missy was "saddled with substantially more debt than Cory" and was required to pay child support.

On appeal, Missy argues the district court's award was improper: "In analyzing all of the factors provided in section 598.21A, it is clear that the district court's award of traditional alimony to Cory is unsupported by the evidence, excessive, and, therefore inequitable." She points out the "durational threshold" for traditional alimony is generally twenty or more years of marriage.

Contrary to Missy's argument, we find the district court's spousal support award achieved equity between the parties and can be justified by the legislative factors. The parties were married for sixteen years. It is true that "the shorter the marriage, the less likely a court is to award traditional spousal support." *See Gust*, 858 N.W.2d at 410. But *Gust* did not set a bright-line rule. *See id.* We have upheld awards of traditional alimony in marriages lasting less than twenty years. *See, e.g.*, *In re Marriage of Shepperd,* No. 14–1766, 2015 WL 7075750, at *4 (Iowa Ct. App. Nov. 12, 2015) (sixteen years); *In re Marriage of Richards,* No. 14-1698, 2015 WL 4935847, at *3 (Iowa Ct. App. Aug. 19, 2015) (sixteen years); *In re Marriage of Witherly,* 867 N.W.2d 856, 860 (Iowa Ct. App. 2015) (seventeen years).

While both parties are in the mid-forties and generally enjoy good health, Cory has encountered some mental-health issues. The record also shows he faces approximately $8000 in bills for required dental work. He previously financed such expenses by selling plasma but is unable to continue doing so. Cory's special need for dental treatment bolsters the reasonableness of the alimony award.

We also consider the property distribution. Because we have adjusted the parties' responsibilities for the outstanding credit card debt, we find the five years

of alimony payments are even more equitable than such an award in the original decree. As spelled out in the decree, Missy had more education than Cory coming into the marriage and also maintains a greater earning capacity than he does. It is not feasible that after the divorce, Cory will become self-supporting at the standard of living the couple enjoyed during the marriage. Given these circumstances, we find the modest award of spousal support to be equitable. *See In re Marriage of Geil*, 509 N.W.2d 738, 742 (Iowa 1993) (holding "modest alimony" awarded by the district court was "an appropriate means of remedying the financial inequity created by the dissolution" of eighteen-year marriage).

### C. Appellate Attorney Fees

Cory asks us to order Missy to pay a portion of his attorney fees incurred on appeal. In exercising our broad discretion, we decline to do so. *See In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006) (considering parties' relative needs, ability to pay, and merits of positions of appeal). While the parties have an income disparity, Cory does not lack the ability to pay his own attorney fees. Moreover, Missy was meritorious in one of her two appellate claims. Given these factors, each party should pay his or her own appellate attorney fees.

We also split the costs of the appeal equally between the parties.

**AFFIRMED AS MODIFIED.**