## IN THE COURT OF APPEALS OF IOWA

No. 16-1326
Filed September 13, 2017

IN RE THE MARRIAGE OF ERENIA DOLORES AREVALO
AND EDGAR SIFREDO AREVALO-LUNA

Upon the Petition of
**ERENIA DOLORES AREVALO,**
        Petitioner-Appellant,

And Concerning
**EDGAR SIFREDO AREVALO-LUNA,**
        Respondent-Appellee.

_____

        Appeal from the Iowa District Court for Polk County, David M. Porter,

Judge.


        Erenia Arevalo appeals from the dissolution decree and the district court's

denial of her request for spousal support. **AFFIRMED AS MODIFIED.**


        Katherine S. Sargent, Des Moines, for appellant.

        Edgar Sifredo Arevalo-Luna, Des Moines, appellee pro se.


        Considered by Vogel, P.J., and Potterfield and Mullins, JJ.

**POTTERFIELD, Judge.**

Erenia Arevalo appeals from the decree dissolving her marriage to Edgar Arevalo-Luna. Erenia maintains the district court should have awarded her spousal support as she requested. She also asks that we award her $1500 in appellate attorney fees.

**I. Background Facts and Proceedings.**

Erenia was born in El Salvador in 1966. She attended only five years of school before coming to the United States in 1995. Edgar was also born in El Salvador, in 1974. He completed twelve years of education before attending three and one half years of college in El Salvador. He came to the United States in 1994. Edgar has taken English-language classes both in El Salvador and at a local community college.

Erenia and Edgar married in in 2001. They had twins, born in 1999, and a third child, born in 2005. At the time of the dissolution trial, the parties agreed they would share joint legal custody of the children and Erenia would have physical care of the children. Edgar was ordered to pay Erenia $1066 per month in child support for the three children.[1]

The only disputed issue at the time of dissolution was whether Edgar should be required to pay Erenia spousal support. Erenia asked the court to order Edger to pay her $400 per month starting in June 2018 (when the twins are expected to graduate high school) until June 2024 (when Edgar's child support obligation for the youngest child was expected to cease), at which point she

---

[1] The decree also outlined Edgar's monthly support obligation for two children—$868—and one child—$602; as agreed by the parties, Edgar's full income from his two full-time jobs was not used to calculate child support.

asked the court to increase the monthly award to $1000. Erenia asked that the $1000 award be "permanent." Edgar was unrepresented at the dissolution trial; when asked what he requested the judge to do with regard to spousal support, he testified, "Whatever the judge thinks is fair because I do need something to live on."

Erenia has a history of sporadic, unskilled employment. Before coming to the United States, she worked in a restaurant and at a store that sold dairy products. Her first job in the United States was working at a McDonald's, which she did for approximately five years. She did not work outside the home for a period after the children were born. In 2012, Erenia began working in food services for the Des Moines Public Schools. She works approximately five and one half hours on days children are in school; she does not work and is not paid on days the children have off, such as weekends, extended holiday breaks, and summer vacation. Her position is an IPERS-covered position, though she has not yet vested in the pension fund. In 2015, Erenia returned to work at McDonald's as a part-time second job. She earned her highest wages that year, with her tax returns showing a combined income of $15,966. Based on the amount of her earnings, Erenia qualified for earned income credit; she received over $7000 in a tax refund, actually making her net income more than her gross income. Once the tax refund is added to her net earnings, Erenia brought home almost $23,000 in 2015.

Edgar has typically worked two jobs since coming to the United States. At the time of the dissolution hearing in March 2016, Edgar testified he had worked at Southeast Polk Community School District for approximately seven years. His

job was also an IPERS-covered position. He worked as a custodian or janitor and was in charge of the other janitors who also worked second shift. In 2015, he earned almost $46,000 in his primary job. Edgar also worked a second full-time job at Walmart. His 2015 tax returns show a combined income of $65,599. In 2014, Edgar had a combined income of $61,902, and in 2013, he had a combined income of $53,758. On top of the $1066 Edgar is to pay Erenia for child support each month, Edgar also has a child support obligation for three children born outside of his marriage, with that obligation being set at $920 each month. His three children born outside the marriage are younger than the children he shares with Erenia, so his second child support obligation was not expected to cease in the near future.

The district court denied Erenia's request for spousal support,[2] stating:

> [Erenia's] request presents several problems. First, the Court can only assume [she] requests that alimony payments begin June 1, 2018 because she recognizes that [Edgar] has a very limited ability to make payment until that time, due to his combined monthly child support obligations, which total $1937.00. This begets the second problem: what type of alimony is being requested? The record does not support a finding that [Erenia'] is entitled to "reimbursement alimony"; there is nothing in this record that supports a contention that [Erenia] made economic sacrifices during the marriage that directly enhanced [Edgar's] future earning capacity. While [Erenia] is certainly economically dependent on [Edgar], her request cannot be properly categorized as rehabilitative alimony either. Such alimony is intended to support the economically dependent spouse through a limited period of re-education or retraining following divorce. The end result is for the once economically dependent spouses to become self-supporting. Under [Erenia's] requests, the $400.00 monthly payments would not begin until 2018. That two-year window is precisely the type of limited grace period for re-education or retraining following divorce.

---

[2] The dissolution decree was silent on the issue of spousal support. After Erenia filed a motion to amend or enlarge, the district court issued a ruling specifically denying the request.

> Under [Erenia's] plan that grace period is left unutilized. Therefore, by process of elimination, it appears [Erenia] intends for the alimony to be characterized as traditional. The Court considered the parties' respective earning capacity, education levels, their age and health, length of their marriage, [Erenia's] likelihood of becoming self-supporting, amount of child support, and [Edgar's] ability to pay alimony as balanced against [Erenia's] relative needs. The Court also considered the parties' property division because of the interrelationship between traditional alimony and property settlements. Although there was a 14 year marriage and [Edgar] has a substantially greater earning capacity than [Erenia], the property and debt division favors [Erenia].

The court noted Edgar was required to execute a quitclaim deed for the marital home, though that property had already been foreclosed upon by the bank holding the mortgage. Additionally, Edgar was ordered to be solely responsible for the $4757 medical bill resulting from a surgery Erenia had undergone, and Erenia was awarded half of Edgar's IPERS benefits that were accrued during the term of the marriage.

Erenia appeals.

## II. Standard of Review.

We review the district court's decision regarding spousal support de novo. *In re Marriage of Anliker*, 694 N.W.2d 535, 540 (Iowa 2005). However, the district court has considerable latitude in making the initial determination based on the factors in Iowa Code section 598.21A (2014), and "[w]e will disturb that determination only when there has been a failure to do equity." *Id.*

## III. Discussion.

### 1. Spousal Support.

We begin our review by noting we are less concerned than the district court was with fitting the support Erenia requests into a certain category. "Types

[of spousal support] are not mutually exclusive." *In re Marriage of Witherly*, 867 N.W.2d 856, 859 (Iowa Ct. App. 2015). In fact, as we have stated, the moniker is nothing more than a red herring. *Id.* And "there is nothing in our case law that requires us, or any other court in this state, to award only one type of support" or to "characterize the support award as purely" one form or another. *In re Marriage of Becker*, 756 N.W.2d 822, 827 (Iowa 2008). Rather, "[w]hat we are required to do is consider the factors mandated by the legislature contained in section [598.21A] when considering a spousal support award." *Id.*

"[I]n determining if alimony is to be awarded and what amount should be awarded, the court may consider the amount of child support under the decree." *In re Marriage of Will*, 489 N.W.2d 394, 400 (Iowa 1992). It is not uncommon for awards of spousal support to increase as the obligation of the party paying child-support decreases. *See, e.g.*, *In re Marriage of Gust*, 858 N.W.2d 402, 415 (Iowa 2015) (where the husband was ordered to pay $1400 in monthly spousal support each month until the termination of his child support obligation, whereupon the spousal support increased to $2000 monthly); *In re Marriage of Van Ryswyk*, 492 N.W.2d 728, 731 (Iowa Ct. App. 1992) (finding equitable the district court's order that the husband's monthly spousal-support obligation increased $250 each time his child-support obligation was reduced). For the same reason, we are not disturbed by Erenia's requested support starting at zero dollars and increasing as Edgar's child support obligation is expected to decrease.

We consider the factors outlined in section 598.21A.[3]  Here, the marriage lasted approximately fourteen and one-half years.  While *Gust* referred to twenty years as the "durational threshold" for "serious consideration for traditional" or permanent support (as Erenia requested), we do not understand that statement as creating a bright-line test.  858 N.W.2d at 410; *see also In re Marriage of Nelson*, No. 15-0492, 2016 WL 3269573, at *3 (Iowa Ct. App. June 15, 2016) (stating the court did not set a bright-line rule in *Gust*).  We have affirmed awards of traditional spousal support in marriages shorter than twenty years and even in marriages much shorter than that of Edgar and Erenia.  *See, e.g.*, *In re Marriage of O'Brien*, No. 99-0206, 2000 WL 328065, at *1 (Iowa Ct. App. Mar. 29, 2000) (affirming award of traditional support for marriage of four years).  Erenia spent a number of the marital years outside the workforce, as she cared for the children and the family home.  *See Gust*, 858 N.W.2d at 440 ("[P]articularly in a traditional

---

[3] The enumerated factors are:

      a. The length of the marriage.

      b. The age and physical and emotional health of the parties.

      c. The distribution of property made pursuant to section 598.21.

      d. The educational level of each party at the time of marriage and at the time the action is commenced.

      e. The earning capacity of the party seeking maintenance, including educational background, training, employment skills, work experience, length of absence from the job market, responsibilities for children under either an award of custody or physical care, and the time and expense necessary to acquire sufficient education or training to enable the party to find appropriate employment.

      f. The feasibility of the party seeking maintenance becoming self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and the length of time necessary to achieve this goal.

      g. The tax consequences to each party.

      h. Any mutual agreement made by the parties concerning financial or service contributions by one party with the expectation of future reciprocation or compensation by the other party.

      i. The provisions of an antenuptial agreement.

      j. Other factors the court may determine to be relevant in an individual case.

marriage, when the parties agree a spouse should stay home to raise children, the economic consequences of absences from the workplace can be substantial.") These facts support an award of permanent support.

"The imposition and length of an award of traditional alimony is primarily predicated on need and ability." *In re Marriage of Wendell*, 581 N.W.2d 197, 201 (Iowa Ct. App. 1998). Even after she returned to work, Erenia's highest year of wages was in 2015, when she worked two jobs and earned less than $16,000. It is unclear if Erenia's earning capacity is more than $16,000; she has had little formal education, and we have no record concerning job skills she may have acquired during her sporadic periods of employment. Meanwhile, the record establishes Edgar earned approximately $66,000 in 2015. Erenia recognized it would be unfair to consider Edgar's entire wage when calculating his child-support obligation "because it wouldn't be fair to require [him] to work two jobs full-time," and a similar reduction is equitable in deciding whether he has the ability to pay Erenia spousal support. Additionally, while we are to take the property division into account when considering whether spousal support is warranted, unlike the district court, we are not persuaded the property division "equalize[d] the inequities and economic disadvantages suffered in marriage by" Erenia. *See In re Marriage of Hazen*, 778 N.W.2d 55, 59 (Iowa Ct. App. 2009). Edgar was ordered to sign a quitclaim deed involving a property already foreclosed on by the bank and to take full responsibility for a medical debt of less than $4800. He was also ordered to split his IPERS benefits pursuant to the

*Benson* formula,[4] though we note it was unclear if he had yet vested in the pension plan as he testified he had worked for the school for "almost seven years." *See* Iowa Code § 97B.1A(25)(d)(4)(b) (stating a member has vested by service when he or she "has completed at least seven years of service").

Even without considering all of Edgar's wages, his established earning capability is multiple times larger than that of Erenia's. While a large portion of those earnings are tied up in his child-support obligations over the next several years, as Erenia recognized, his ability to pay spousal support will likely increase in 2018 and again in 2024. In these circumstances, we believe a permanent award of spousal support is equitable. We award Erenia $400 monthly in spousal support beginning on June 1, 2018. The award is to increase to $600 following the high school graduation of Erenia's and Edgar's youngest child. We do not limit the duration, except upon Erenia's remarriage or the death of either party. *See, e.g.*, *Gust*, 858 N.W.2d at 415.

**B. Appellate Attorney Fees.**

Erenia also asks we award her $1500 in appellate attorney fees. "Appellate attorney fees are not a matter of right, but rather rest in this court's discretion." *In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006). "Factors to be considered in determining whether to award attorney fees include: 'the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal.'" *Id.* (quoting *In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005)). Although Erenia has been successful on appeal, we believe our modification of the award of spousal support equips Erenia to pay

---

[4] *See In re Marriage of Benson*, 545 N.W.2d 252, 255 (Iowa 1996).

her own attorney fees. *See, e.g., In re Marriage of Larson*, No. 14-1333, 2015 WL 5965116, at *10 (Iowa Ct. App. Oct. 14, 2015).

We affirm the dissolution decree as modified above.

**AFFIRMED AS MODIFIED.**