# IN THE COURT OF APPEALS OF IOWA

No. 21-1000
Filed March 30, 2022

IN RE THE MARRIAGE OF JACOB TYLER MANSHIP
AND ELAINE ANN MANSHIP

Upon the Petition of
JACOB TYLER MANSHIP,
        Petitioner-Appellant,

And Concerning
ELAINE ANN MANSHIP,
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Hardin County, Bethany J. Currie,

Judge.


        A former husband appeals the economic terms of a dissolution decree.

**AFFIRMED.**


        Melissa A. Nine of Nine Law Office, Marshalltown, for appellant.

        Reyne L. See of Peglow, O'Hare & See, P.L.C., Marshalltown, for appellee.


        Considered by Vaitheswaran, P.J., and Tabor and May, JJ.

**TABOR, Judge.**

Jacob and Elaine Manship divorced following twenty-seven years of marriage. Jacob now challenges the award of spousal support and trial attorney fees. Finding the court did equity between the former spouses, we affirm the support order and trial attorney fees. But given Jacob's financial condition, we deny Elaine's request for attorney fees on appeal.

## I. Facts and Prior Proceedings

Jacob and Elaine married in 1994. During their long marriage, the pair had four children. Only the youngest child, B.M., was still eligible for support at the time of the dissolution.

The parties' employment histories are relevant to the issues on appeal. Jacob has worked for the State Training School in Eldora for over twenty years. Until his recent promotion, Jacob earned about $65,000 a year.[1] In contrast, Elaine's work experience is more limited. She asserts that Jacob did not want her working around other men, limiting her job prospects to short-term, low-paying positions. For a few years in the mid-1990s, she worked as a cosmetologist. But her license lapsed over twenty years ago. Post-cosmetology, Elaine cleaned offices, worked in a grocery store, and helped Jacob manage hog sites. But her most consistent employment has been at a local preschool, having worked there on-and-off since 2001. At the preschool, she's a jack of all trades, filling different

---

[1] The record does not include a paystub showing Jacob's salary after the promotion. But Elaine offered an exhibit showing his new position pays up to $77,272 per year.

roles as needed. And her wages vary depending on which hat she's wearing that day. Historically, Elaine has earned less than $10,000 annually.

Neither Jacob nor Elaine have serious health concerns. But Jacob does have shoulder, back, and ankle pain from injuries sustained in the military.[2] Besides those physical conditions, Jacob takes medication for anxiety, depression, and attention deficient disorder. Elaine testified that she is "in good general health" but has a "few issues" that require prescription medications.

During the divorce proceedings, the parties stipulated to the asset division. Elaine kept the marital home, obligated to refinance the mortgage so that it would only be in her name. Jacob received most of the other assets and took on debts that pre-dated the divorce petition. The Manships also agreed that Elaine should have physical care of then eleven-year-old B.M.

After trial, the district court awarded Elaine a portion of Jacob's pension fund, $1200 per month in traditional spousal support, $763.63 per month in child support, and $15,000 in attorney fees. The court slated the spousal support award to increase to $1900 after Jacob's child support obligation ended. Jacob now appeals.

## II. Scope and Standards of Review

We review dissolution cases de novo. Iowa R. App. P. 6.907; *In re Marriage of Larsen*, 912 N.W.2d 444, 448 (Iowa 2018). We give weight to the district court's fact findings, particularly on witness credibility, but they do not bind us. *See In re Marriage of Sullins*, 715 N.W.2d 242, 247 (Iowa 2006).

---

[2] The Department of Veterans Affairs (VA) determined these injuries were "service-connected," so he's entitled to $1656.71 per month in veterans' benefits.

When it comes to spousal support, any award is a matter of discretion and not a matter of right. *In re Marriage of Mann*, 943 N.W.2d 15, 20 (Iowa 2020). So we accord "considerable latitude" to the district court and will disturb its award only when it fails to do equity. *In re Marriage of Stenzel*, 908 N.W.2d 524, 531 (Iowa Ct. App. 2018).

As for attorney fees, we review their denial for abuse of discretion. *In re Marriage of Goodwin*, 606 N.W.2d 315, 324 (Iowa 2000). We exercise our own discretion in deciding whether to award appellate attorney fees*. Mann*, 943 N.W.2d at 23.

### III. Analysis

### A. Spousal support

Spousal support awards turn on each case's unique facts. *In re Marriage of Becker*, 756 N.W.2d 822, 825 (Iowa 2008). But our analysis is guided by the statutory factors in Iowa Code section 598.21A (2019). We also consider the property division to ensure equity is done between the parties. *In re Marriage of McNerney*, 417 N.W.2d 205, 209 (Iowa 1987).

Like the district court, we believe traditional spousal support is appropriate. *See In re Marriage of Gust*, 858 N.W.2d 402, 410 (Iowa 2015) (noting marriages over twenty years long "merit serious consideration for traditional spousal support"); s*ee also In re Marriage of Witherly*, 867 N.W.2d 856, 859 (Iowa Ct. App. 2015) (describing categories of spousal support). During their twenty-seven-year marriage, Jacob was the primary breadwinner, bringing in a paycheck and also receiving VA benefits. In contrast, Elaine's focus was in the home, forgoing her cosmetologist career to raise the children.

Traditional spousal support is awarded for "so long as a spouse is incapable of self-support." *In re Marriage of Francis*, 442 N.W.2d 59, 63–64 (Iowa 1989). And we balance the relative needs of the recipient spouse against the ability of the other spouse to pay. *See In re Marriage of Wendell*, 581 N.W.2d 197, 201 (Iowa Ct. App. 1998). In the end, our goal is to secure a standard of living for the parties comparable to the one that they enjoyed during the marriage. *See Gust*, 858 N.W.2d at 411.

Elaine was awarded $1200 in monthly support, set to increase to $1900 once their youngest child reaches adulthood. Jacob challenges the award's amount and duration. He claims he can't "stretch the almighty dollar" to cover $1200 in spousal support, $700 in child support, and $3400 in personal monthly expenses. As proof, Jacob points to a recent paystub showing biweekly take-home pay of $876.79. Based on that payroll warrant, he asks us to intervene, insisting you "cannot get blood from a turnip."

But there's several flaws with this argument. First, Jacob's paystub represents his pre-promotion income. Second, Jacob's outdated paystub includes wage garnishments. And these deductions represent some of his outstanding personal expenses. Third, his wage income is supplemented by his VA benefits. Jacob argues these benefits are likely to decrease after the divorce because he will no longer have a wife and child as dependents.[3] But whatever decrease does

---

[3] At the district court, Jacob asserted his benefits would decrease by $171 a month after Elaine and B.M. were no longer dependents. But the district court rejected this calculation, reviewing Jacob's benefit letter and determining it was "entirely unclear what, if any, effect, the dissolution or Elaine's claiming of the child on the tax return would have on Jacob's VA benefits."

occur, it will likely be offset by his promotion and the accompanying pay raise. So we adopt the district court's $85,699.03 annual—$7141.59 a month—income calculation.

As for Elaine, she works part-time at a local preschool. But her income is less predictable. Although she's worked at the preschool for several years, she's never earned more than $10,000 annually. That said, the district court determined—and Elaine agreed—that she could earn $22,620 a year.

But Jacob thinks she can earn more. In particular, he points to three openings at the State Training School, all of which start with annual salaries around $40,000 and don't require higher education. Even better, he suggested that he could leverage his position as a supervisor to help Elaine get hired. The district court denied this option. It noted the issues that may arise from working with an ex-spouse. The court also believed that a more traditional nine-to-five position would require Elaine to arrange child care, thus "negat[ing] the purpose of earning additional income."

On balance, we agree that setting Elaine's earning capacity at $22,620 per year—$1855 per month—was reasonable, even if on the low side of reasonable. B.M. does not like to be left alone and, as Jacob acknowledged, the State Training School does not offer flexible hours. What's more, an earning capacity of $22,620 per year is already more than double Elaine's historic earnings. And will only be achieved if Elaine increases her hours, works over the summer, and substitutes for her coworkers' shifts.

Next, Jacob asks us to consider the "cloud of debt" following him from the marriage. But Jacob's monthly expenses are not much higher than Elaine's

outlays.[4]  We also recall Jacob's testimony that "several of [his] loans are fairly close to being paid off" and would "be going away in the near future."  And, as Elaine explains, Jacob could cut costs if he drove the 2012 Lincoln MKZ that was awarded to him in the dissolution.[5]

Although we appreciate Jacob's concerns for his financial future, his situation resembles the standard of living enjoyed during the marriage and, equates to the one Elaine will enjoy going forward.  *See Gust*, 858 N.W.2d at 415; *In re Marriage of Hayne*, 334 N.W.2d 347, 351 (Iowa Ct. App. 1983).  Both Jacob and Elaine lived beyond their means.  During trial, both agreed "the finances were a disaster."  They "lived paycheck to paycheck and often on borrowed funds."  Although Jacob may prefer having a financial cushion, that preference does not erase his obligation to support Elaine following their long marriage.

Pivoting, Jacob asks that the award terminate upon his early retirement.[6]  As he sees it, because the district court already divided his IPERS account, continuing support beyond his retirement would be "double-dipping" for Elaine.  But that type of argument is best considered when retirement is imminent.  *See Gust*, 858 N.W.2d at 417.  Indeed, given Jacob's "cloud of debt" he may end up choosing to work until he reaches regular retirement age.

---

[4] Elaine's financial affidavit detailed $3627 in monthly expenses.  Jacob's affidavit reflected $3417.  He now argues his bottom line should be $2300 higher because his affidavit "d[id] not include many additional monthly expenses [he] is responsible for that are otherwise in the record."  But his math does not add up.  Even accounting for these missing loan payments, his expenses are, at most, $4142.74—still close to Elaine's total.

[5] During the proceedings, Jacob bought a used Ford Explorer, assuming another $850 per month loan payment.  In contrast, Elaine anticipates her replacement vehicle will cost $350 per month.

[6] Forty-seven at the time of trial, Jacob intends to retire at fifty-five.

Because the district court did equity between the parties, we do not alter the award terms.

## B. Attorney Fees

Jacob next challenges the $15,000 attorney fee award, arguing his insolvency makes the amount "nearly punitive."[7]  We review attorney fee awards for abuse of discretion.  *See In re Marriage of Scheppele*, 524 N.W.2d 678, 680 (Iowa Ct. App. 1994).  In doing so, we consider the parties' respective abilities to pay.  *See In re Marriage of Guyer*, 522 N.W.2d 818, 822 (Iowa 1994).  Because Jacob earns significantly more than Elaine does, we cannot find that the district court abused its considerable discretion in awarding attorney's fees.

Finally, Elaine requests $5320.50 in appellate attorney fees.  We make those awards at our discretion.  *In re Marriage of Kurtt*, 561 N.W.2d 385, 389 (Iowa Ct. App. 1997).  We consider Elaine's needs, Jacob's ability to pay, and whether she had to defend on appeal.  *See id.*  Yes, Elaine successfully rebuffed Jacob's challenges.  But he's in no better position to pay than she is.  So we deny her request.

**AFFIRMED.**

---

[7] Elaine argues that error is not preserved.  In support, she highlights an exchange between Jacob and his attorney:

> Q. Okay.  They're asking that you pay $10,000 of Elaine's attorney fees.  You heard that, right?  A. I heard that.
> . . . .
> Q. You understand you're going to have to pay that, too?
> A. Yes, sir.

As she sees things, Jacob conceded to the fees.  Countering, Jacob asserts the exchange was sarcasm.

Regardless of tone, we agree error was preserved.  This exchange aside, the parties' disagreement on fees is clear.  And the court considered the attorney fees as one of "the five remaining issues"—both at trial and in its order.