# IN THE COURT OF APPEALS OF IOWA

———————————

No. 25-0364
Filed May 27, 2026

———————————

**In re the Marriage of Patricia Anne Thoma and Zachary Clayton Thoma**

Upon the Petition of
**Patricia Anne Thoma,**
Petitioner–Appellant/Cross-Appellee,

And Concerning
**Zachary Clayton Thoma,**
Respondent–Appellee/Cross-Appellant.

———————————

Appeal from the Iowa District Court for Black Hawk County,
The Honorable Joel Dalrymple, Judge.

———————————

**AFFIRMED ON BOTH APPEALS**

———————————

Kevin D. Engels of Correll, Sheerer, Benson, Engels, Galles & Demro,
PLC, Cedar Falls, attorney for appellant/cross-appellee.

Andrew B. Howie of Shindler, Anderson, Goplerud & Weese, P.C., West
Des Moines, attorney for appellee/cross-appellant.

———————————

Considered without oral argument by Ahlers, P.J., Sandy, J., and Vogel, S.J.
Opinion by Sandy, J.

1

**SANDY, Judge.**

Patricia and Zachary Thoma appeal the spousal support provisions of the decree dissolving their marriage. The income disparity between the parties is real and undisputed: Zachary earns nearly $110,000 more per year than Patricia does. While spousal support is not designed to close income gaps, the district court nonetheless considered the relevant statutory factors, weighed the whole economic picture (including the parties' income disparity), and reached an award within the range equity permits. So we affirm on both Patricia's appeal and Zachary's cross-appeal.

## BACKGROUND FACTS AND PROCEEDINGS

Patricia Thoma and Zachary Thoma were married on September 28, 2013. Three children were born through the marriage: J.W.T., born in 2017; T.C.T., born in 2019; and C.P.T., born in 2021. At the time of trial, the children were in first grade, kindergarten, and not yet in school, respectively. Both Patricia and Zachary were forty-one years old and in relatively good health.

Patricia earned a bachelor's degree in marketing in 2008 and completed her MBA in 2013, shortly before the marriage. During the marriage, she worked for several financial institutions, including Empeople Credit Union, U.S. Bank, and Collins Credit Union. In 2018, after the birth of the parties' first child, Patricia left the workforce and became a stay-at-home mother. The parties disputed the reasons for that decision: Patricia testified that it allowed Zachary greater flexibility to travel for work and advance his career, while Zachary attributed the decision to Patricia's concerns about daycare. The district court found that, regardless of the reason, Patricia remained out of the workforce for approximately half of the parties' nearly eleven-year-and-a-half-year marriage.

Patricia returned to work in May 2024. She first worked for Real Clear Settlement and then became a commercial loan officer with Denver Savings Bank. At the time of trial, Patricia earned $65,000 per year, which the district court used for child-support purposes. The court added that Patricia's highest prior income was approximately $75,000 with Empeople Credit Union, though both parties acknowledged that amount reflected market conditions that were no longer as favorable.

Zachary earned a bachelor's degree in general studies and worked as a regional sales manager for Kawasaki Robotics. His position allowed him to work mostly from home but required travel, including being out of the office at least once per week and traveling for a full week approximately four times per year. Zachary's base salary was $153,000. Although commissions were possible but not guaranteed, Zachary conceded that $174,000 was a fair approximation of his gross annual income, and the district court used that figure in its decree.

Patricia filed a petition for dissolution of marriage in April 2024, requesting, among other relief, spousal support. Zachary answered and resisted any spousal-support award. In July, the district court entered an order adopting the parties' stipulation regarding temporary matters. Under that order, Zachary was required to pay Patricia $1,177 per month in temporary child support and $1,123 per month in temporary spousal support. The matter proceeded to trial in February 2025. Before trial, the parties entered into a partial stipulation, and during trial Zachary conceded to additional visitation provisions contained in Patricia's requested disposition. The district court approved and incorporated the parties' stipulations into its decree.

In its February 14 decree, the district court dissolved the marriage and adopted the parties' agreement for joint legal custody and shared physical care. The court addressed spousal support which both parties now appeal. At trial Patricia requested $1,123 per month for seven years. The district court concluded Patricia was entitled to "rehabilitative and/or transitional support" but disagreed with her requested amount and duration. The court considered, among other things, the length of the marriage, Patricia's time out of the workforce, the temporary support already paid, the parties' respective debt obligations, Zachary's agreement to pay the Pacifica loan and insurance, Zachary's income being 2.6 times Patricia's income, the parties' equal sharing of children's expenses, Zachary's payment of marital expenses after separation, and Patricia's liquidity from the property distribution.[1] The court found traditional alimony unwarranted but determined rehabilitative and/or transitional support was appropriate. It ordered Zachary to pay Patricia spousal support of $300 per month beginning March 1, 2025, for five years.

Because the decree directed the parties to prepare child-support guidelines worksheets consistent with the court's findings, the district court entered a separate child-support order on February 21, 2025. The court ordered Zachary to pay Patricia $918 per month beginning March 1, 2025, and continuing until Zachary's spousal-support obligation ended on February 28, 2030. The order then increased Zachary's child-support obligation to $1,019 per month until only two children remained eligible for support, reduced it to $883 per month when only two children remained

---

[1] The district court ordered Zachary to make an equalization payment to Patricia of $77,579. Of that amount, $30,000 was to be paid in cash within ninety days of the decree, and $47,579 was to be transferred from Zachary to Patricia through a qualified domestic relations order or other means limiting tax consequences.

eligible, and reduced it to $622 per month when only one child remained eligible.

Patricia challenges both the amount and duration of the spousal-support award and seeks remand for recalculation of child support if the spousal-support award is modified. Specifically, she requests $1,123 per month for seven years. Patricia also requests appellate attorney fees. Zachary cross-appeals, arguing no spousal support should have been awarded at all or, alternatively, that any award should be reduced. He likewise seeks remand for recalculation of child support if the spousal support award is modified.

## STANDARD OF REVIEW

Dissolution of marriage proceedings are equitable actions. Iowa Code § 598.3 (2025). So our review is de novo. *In re Marriage of Gust*, 858 N.W.2d 402, 406 (Iowa 2015). Although we review de novo, "[w]e give weight to the findings of the district court, especially to the extent credibility determinations are involved." *In re Marriage of Hansen*, 733 N.W.2d 683, 690 (Iowa 2007).

On spousal support challenges, we build in "considerable latitude" for the district court's discretion. *Id.* We avoid undue tinkering with those awards. *In re Marriage of Sokol*, 985 N.W.2d 177, 182 (Iowa 2023). Yet the district court's findings are not binding on us. *In re Marriage of Schenkelberg*, 824 N.W.2d 481, 484 (Iowa 2012). We modify a spousal support award when it does not achieve equity. *Gust*, 858 N.W.2d at 406.

## DISCUSSION

Awarding spousal support is a matter of discretion and depends on the facts of each case. *In re Marriage of Mann*, 943 N.W.2d 15, 20 (Iowa 2020). In making this decision, we consider these statutory factors:

a. The length of the marriage.

b. The age and physical and emotional health of the parties.

c. The distribution of property made pursuant to section 598.21.

d. The educational level of each party at the time of marriage and at the time the action is commenced.

e. The earning capacity of the party seeking maintenance, including educational background, training, employment skills, work experience, length of absence from the job market, responsibilities for children under either an award of custody or physical care, and the time and expense necessary to acquire sufficient education or training to enable the party to find appropriate employment.

f. The feasibility of the party seeking maintenance becoming self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and the length of time necessary to achieve this goal.

g. The tax consequences to each party.

h. Any mutual agreement made by the parties concerning financial or service contributions by one party with the expectation of future reciprocation or compensation by the other party.

i. The provisions of an antenuptial agreement.

j. Other factors the court may determine to be relevant in an individual case.

Iowa Code § 598.21A(1).

"The goal in awarding alimony is to do equity." *In re Marriage of Pazhoor*, 971 N.W.2d 530, 541 (Iowa 2022). Patricia argues that $300 per month does not adequately reflect the disparity in the parties' incomes nor the years she spent at home. But as our supreme court has recently opined, Patricia's "need" is not to be measured by the gap between her paycheck and Zachary's. *See In re Marriage of Owen & Brinker*, 29 N.W.3d 6, 14 (Iowa 2025) ("The purpose [of traditional spousal support] is not to equalize the parties'

6

respective incomes."). Here, the district court considered the entire economic picture: Patricia's $65,000 salary, the temporary support she had already received, the $77,579 equalization payment, Zachary's assumption of more than $315,000 of marital debt against her $19,643, his agreement to pay the loan and insurance on her vehicle, and the parties' equal sharing of the children's expenses. The court properly found that the property distribution provides Patricia "some liquidity to obtain suitable long-term housing," and that her need, against that backdrop, is modest. As to the *amount* of spousal support, we find no failure to do equity.

Duration of spousal support is a harder question because rehabilitative spousal support[2] necessarily rests on a prediction about how long re-establishment will take. The hallmarks of a rehabilitative award are self-sufficiency and a definite end to the award. *See In re Marriage of Witherly*, 867 N.W.2d 856, 859 (Iowa Ct. App. 2015). The district court fixed five years. Patricia presses for seven and Zachary asks for less or none.

We see no reason to "tinker" with the district court's choice of five years of rehabilitative support. *See Sokol*, 985 N.W.2d at 182. It approximates the period Patricia spent out of the workforce—the very gap the support is meant to bridge. It also reflects the reality that Patricia has already begun the rehabilitation the support is designed to facilitate: she has returned to a salaried position in her field, with an MBA in hand, at an income only modestly below what she earned before leaving the workforce. The district court was entitled to credit that progress without ignoring it. Yet, Zachary's

---

[2] The district court labeled its spousal support award as "rehabilitative and/or transitional support". We, like the district court, see no reason to distinguish the two although they are distinguishable. *See Pazhooor*, 971 N.W.2d at 539 ("The term 'transitional' has been used interchangeably with 'rehabilitative.'").

request for no or less spousal support assumes a degree of independence that ignores the years of career progression Patricia lost to support the growth and care of the parties' children. The court chose the middle path—and on this record, that is a path equity supports. We therefore affirm the district court's spousal support award in its entirety.

Finally, Patricia requests $2,500 in appellate attorney fees. We do not award appellate attorney fees as a matter of right. *In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006). Instead, any award rests in our discretion. *Id.* In exercising that discretion, we consider "the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *Id.* (citation omitted). We decline to award Patricia attorney's fees.

**AFFIRMED ON BOTH APPEALS.**