**In re the MARRIAGE OF John E. HAGERLA AND Susan J. FRAZEE–HAGERLA.**

**Upon the Petition of John E. Hagerla, Petitioner–Appellant,**

**and**

**Concerning Susan J. Frazee–Hagerla, Respondent–Appellee.**

**No. 04–0976.**

Court of Appeals of Iowa.

April 28, 2005.

Eric Borseth of Borseth, Siebrecht & Siebrecht, Altoona, for appellant.

Timothy McCarthy of McCarthy & Hamrock, P.C., West Des Moines, for appellee.

Heard by SACKETT, C.J., and HUITINK and VAITHESWARAN, JJ.

SACKETT, C.J.

Appellant John Hagerla appeals, challenging the economic provisions of the February 27, 2004, decree dissolving his nearly fifteen-year marriage to Susan Frazee–Hagerla. We affirm as modified.

Our review is de novo. Iowa R.App. P. 6.4. We give weight to the fact findings of the trial court, especially when

considering the credibility of witnesses. Iowa R.App. P. 6.14(6)(*g* ). We are not bound by these determinations, however. *Id.* We base our decision primarily on the particular circumstances of the parties presently before us. *In re Marriage of McKamey,* 522 N.W.2d 95, 97 (Iowa Ct. App.1994); *see In re Marriage of Weidner,* 338 N.W.2d 351, 356 (Iowa 1983).

The parties were married in 1990. Susan was born in late 1961, John in early 1962. Both are high school graduates but neither has an advanced degree, although Susan apparently has a year of college. They have a son born in 1993 and a daughter born in 1994. The parties were named joint custodians of the children and Susan was given primary physical care. The issue of custody is not disputed.

The district court determined John's income to be $80,000 and Susan's income to be $20,000. John was ordered to pay $1,222.41 monthly as support for two children and $868.28 when only one child was subject to support. John was given the tax exemption for the younger child and Susan for the older child. John was also ordered to maintain health insurance on the children and to pay seventy-five percent of uncovered expenses after Susan had paid the first $250 on each child or a maximum of $500. He was also ordered to pay Susan what would appear to be rehabilitative alimony of $1,000 a month for a period of six months and $600 a month for the next eighteen months. The district court divided the parties' assets and made certain other orders, including ordering the parties' personal residence sold and dividing the proceeds subject to Susan paying the mortgage payment and receiving $1,000 a month credit for February and March of 2004 and the amount of principal paid until the home sells.

**Child support.** John first challenges the amount of child support he was or-dered to pay. He contends the district court attributed too much income to him and too little to Susan in computing child support.

■■■ Before applying the guidelines there needs to be a determination of the net monthly income of the custodial and noncustodial parent. *In re Marriage of McQueen,* 493 N.W.2d 91, 92 (Iowa Ct. App.1992). The court must determine the parents' current income from the most reliable evidence presented. *See In re Marriage of Powell,* 474 N.W.2d 531, 533 (Iowa 1991). Application of the child support guidelines chart first involves a determination of net monthly income of each parent. *In re Marriage of Lalone,* 469 N.W.2d 695, 696 (Iowa 1991); *In re Marriage of Miller,* 475 N.W.2d 675, 678 (Iowa Ct.App.1991).

■ **John's income.** The district court took an average of John's earnings from 1999, 2000, 2001, and 2003 to determine his annual income was $80,000 for purposes of computing child support. His 2002 income, which was exceptionally high, was not averaged in with the other years. His earnings in that four-year period included salary and bonuses. In 1999, 2000, and 2001 John worked for the National Pork Board. As part of a National Pork Board reduction in force his job, together with the jobs of certain other employees of the Board, were terminated, and he received a severance package.

John then found employment on August 18, 2003 with the U.S. Food Service in Phoenix, Arizona as an employee at will. His annual salary was fixed at $65,000. After ninety days of continuous employment he would be in a program with a base salary plus commissions earned on a predetermined customer base and be eligible to participate in their management bonus opportunity plan. He testified the company had not paid a bonus in six years.

He also received certain benefits including health, life, and disability insurance and retirement benefits. He left that employment after about two and a half months. He then went to work for Distributing Plus, Inc. for an annual salary of $65,000. He testified he was told there would be no bonuses in 2003 and he did not anticipate receiving a bonus in the future. John contends the district court should not have averaged his income or considered bonus income and that his child support obligation should be computed on his annual salary.

 We recognize that in some cases the only equitable way to determine income for purposes of child support is to average income over a period of time. *In re Marriage of Cossel,* 487 N.W.2d 679, 681 (Iowa Ct.App.1992). In addressing the fluctuating income of a farmer we said:

> To establish a monthly income for a self-employed person or one who has fluctuating monthly income, it generally is best to use an average of income from a period that accurately reflects the fluctuations in income. A farmer produces commodities that fluctuate in value.

*Id.*

We also noted in *Cossel,* 487 N.W.2d at 682, that the definition of income as used in the child support guidelines is most readily adaptable to the parent employed at a set monthly wage as opposed to a self-employed farmer whose income we averaged over a three-year period.

*Cossel* has been followed by a series of other cases where averaging earnings over several years was considered in determining a parent's income for purposes of applying the child support guidelines. *In re Marriage of Mayfield,* 477 N.W.2d 859, 862 (Iowa Ct.App.1991) (noting "net income" was properly found to equal average of last two years of taxable income); *In re Marriage of Hoag,* 380 N.W.2d 8, 10 (Iowa Ct.App.1985) (considering a five-year period of farming in determining income); *see also In re Marriage of Robbins,* 510 N.W.2d 844, 846 (Iowa 1994) (stating "it is unrealistic and unfair to fix child support obligations based solely on the most recent periodic income amounts"); *In re Marriage of Powell* 474 N.W.2d at 534 (noting that when a parent's income is subject to substantial fluctuations, it may be necessary for the court to average the parent's income over a reasonable period when determining the current monthly income); *see also In re Marriage of Knickerbocker,* 601 N.W.2d 48, 52 (Iowa 1999).

John is employed at a wage. He is not self-employed. The fluctuations in his income over the period at issue are the result of earnings in prior employment. The credible evidence shows he changed jobs because he was let go by the National Pork Board as a result of its reduction in work force. While the income from his prior employment was greater, nothing in the record reflects that he has not sought employment where he would receive similar compensation. Nor is there any evidence that the change in his employment was made to reduce his income for purposes of reducing his child support obligation. *See In re Marriage of Swan,* 526 N.W.2d 320, 324 (Iowa 1995) (holding that parents who reduce their income through an improper intent to deprive their children of support or in reckless disregard for their children's well-being are not entitled to a commensurate reduction in child support payments). Also, to get his new job John has been forced to relocate.

 John also contends an amount considered bonus income should not have been added to his income. All income that is not anomalous, uncertain, or speculative should be included when determining a

party's child support obligations. *In re Marriage of Brown,* 487 N.W.2d 331, 333 (Iowa 1992); *In re Marriage of Russell,* 511 N.W.2d 890, 893 (Iowa Ct.App.1993). Bonuses are frequently included in income. *Lalone,* 469 N.W.2d at 696 (finding employee bonus amount included in "monthly income"); *In re Marriage of Pettit,* 493 N.W.2d 865, 868 (Iowa Ct.App.1992) (finding overtime and bonus income included in "monthly income").

■ When deciding whether bonuses are to be included in gross income, we examine the employment history of the payor over the past several years to determine whether the amount of money paid from year to year was consistent. If so the bonuses should be included in gross income. *In re Marriage of Nelson,* 570 N.W.2d 103, 105 (Iowa 1997); *Russell,* 511 N.W.2d at 893. While there is evidence John may earn a bonus and has earned bonuses in prior employment, he has no track record in his current employment to show that he has or will receive a bonus there.

While there is substantial precedent both to average income over several years and to include bonuses and expected bonuses in income for purpose of figuring child support, the facts here do not support income averaging nor do they support attributing additional income to John for what may be a bonus. John was forced to find a new job as a result of a workforce reduction. His new job is at less compensation and there is no track record in the new job to determine a bonus. John's income for purposes of determining child support is his salary of $65,000 a year, and we modify the district court's finding accordingly.

■ John also contends Susan can earn more than $20,000 a year, and an amount in excess of that should be attributable to her as her income. Susan worked until 1998 when she left the job market. At the time she exited she was earning $35,600 annually. Susan has been out of the job market since 1998.

While the parties seemed in agreement about Susan's decision to stay home and spend more time with the children initially, John testified that it was not the agreement that her absence from the job market would continue for the period that it did.

Susan was not working outside the home at the time of trial. She turned down a lucrative job because it conflicted with child care responsibilities. While Susan may well have greater earning potential than that considered by the court, we consider the time she has been out of the job market, whether it was with John's blessing or not. The amount attributed to her by the district court is not unreasonable. Based on our reduction of John's income, the child support is modified as of the date of the decree to $987.45 a month for two children and $674.19 a month for one child.

**Property division.** John next contends the property division was not equitable. Susan contends the district court's division is equitable.

■ Before making an equitable distribution of assets in a dissolution, the court must determine all assets held in the name of either or both parties as well as the debts owed by either or both. *See In re Marriage of Driscoll,* 563 N.W.2d 640, 641–42 (Iowa Ct.App.1997); *In re Marriage of Brainard,* 523 N.W.2d 611, 616 (Iowa Ct.App.1994). The assets should then be given their value as of the date of trial. *Locke v. Locke,* 246 N.W.2d 246, 252 (Iowa 1976); *In re Marriage of McLaughlin,* 526 N.W.2d 342, 344 (Iowa Ct.App. 1994).

The partners in a marriage are entitled to a just and equitable share of the property accumulated through their joint efforts. *In re Marriage of Russell,* 473 N.W.2d 244, 246 (Iowa Ct.App.1991). Iowa courts do not require an equal division or percentage distribution. *Id.* The determining factor is what is fair and equitable in each circumstance. *Id.* The distribution of the property should be made in consideration of the criteria codified in Iowa Code section 598.21(1) (2003). *See In re Marriage of Estlund,* 344 N.W.2d 276, 280 (Iowa Ct.App.1983).

The district court ordered the parties' personal residence and stocks sold and the proceeds divided equally. The parties claimed about $80,000 equity in the home. John does not challenge this distribution.

It is the division of the balance of the property, primarily (1) retirement accounts, (2) debt, which was allocated to John, (3) furniture and appliances, which were given primarily to Susan, and (4) two vehicles, one of which was given to each party, that John contends is not equitable. He contends it was not equitable for the court not to include the value of appliances and furniture left in the home for Susan. Susan contends the trial court did not provide that the appliances will stay with the house when it is sold, so consequently John will, through the sale of the home, receive a half interest in them. John valued the furniture at $15,000 and the appliances at $10,380. Susan did not value either of them on her financial statement. John contends the personal property he received had been given to him by his family during the marriage.

John also contends the vehicles were not equitably divided. Susan received a 2000 Oldsmobile van which she valued at $7,900 and John received a 1996 Ford Explorer which Susan valued at $6,200 on her financial statement. John contended the Olds-mobile van was worth $15,125 and the Ford Explorer was worth $8,200 on his proposed division of assets. John testified the Explorer had 72,000 miles. He testified without objection that the Kelly Blue Book valued the van, which was in good shape, at $15,125.

The trial court denied John's request to make an award to equalize the furniture, appliances, and vehicles saying,

> The Court does not believe that the respondent [Susan] has the values that the petitioner [John] listed for the appliances and furniture and therefore I did not make any equalization on that figure or the vehicles.

Susan received more in value in the furniture, appliances, and vehicle than did John in the vehicle and personal items he received. John also contends he should have had $9,500 in a retirement account set aside to him because it was an account he accrued before he married Susan. He testified that one of the two 401(k) accounts he had with the Pork Board was a rollover from a earlier job with Dubuque Foods and that approximately $9,500 of that account had been accumulated before he married Susan. Iowa Code section 598.21(1)(b) directs that one of the factors the court should consider in making an equitable division of property is what each party brought to the marriage.

John also contends it was not fair to require him to pay certain debt. He contends Susan received $49,642 in excess of what he received. Susan contends John was given the debt to lessen the impact of the disparity in retirement accounts.

Considering that no value was attributed to furniture and appliances allocated to Susan and John had a retirement account of some value at the time of the marriage, we agree with John that some debt should be allocated to Susan. We order that she be responsible for the prin-

cipal on the Target Card at the time of the decree, plus any interest that has been paid or accrued on the card since that time.

John's last complaint is that Susan was allowed to live in the home until it was sold and the profits divided, and that she was given a credit towards her equity until the home was sold. The credit was $1,000 for the months of February and March and then a credit towards principal paid. We cannot say this is not equitable.

We award no appellate attorney fees. Costs on appeal are taxed one-half to each party.

**AFFIRMED AS MODIFIED.**