# IN THE COURT OF APPEALS OF IOWA

No. 18-0422
Filed July 24, 2019

IN RE THE MARRIAGE OF NORA KATHLEEN DIRKX
AND DANIEL DUANE DIRKX

Upon the Petition of
**NORA KATHLEEN DIRKX,**
        Petitioner-Appellant,

**And Concerning**
**DANIEL DUANE DIRKX,**
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Carroll County, William C. Ostlund,

Judge.


        An ex-wife appeals the combined award of spousal and child support in the

dissolution-of-marriage decree.  **AFFIRMED AS MODIFIED AND REMANDED.**


        Gina C. Badding (until withdrawal) and Arthur E. Neu of Neu, Minnich,

Comito, Halbur, Neu & Badding, P.C., Carroll, for appellant.

        James R. Van Dyke of Law Office of James R. Van Dyke, P.C., Carroll, for

appellee.


        Considered by Potterfield, P.J., and Tabor and Bower, JJ.

**TABOR, Judge.**

After more than two decades of marriage and eleven children, Nora Dirkx filed for divorce from her husband Daniel Dirkx. Although Nora had not worked outside the home since the first year of their marriage, the district court denied her request for traditional alimony. The court awarded her rehabilitative alimony for ten years, but did not set a monthly amount. Instead, the court capped Daniel's total obligation for child and spousal support at $1400.

On appeal, Nora challenges the district court's calculation of their respective incomes, as well as its fusing of the child support and alimony awards. We affirm the decree. But because we find the support orders to be inequitable, we remand for the court to recalculate Daniel's obligations.

## I.  Facts and Prior Proceedings

Daniel and Nora married in 1993. Before the couple had children, Nora worked as a teacher for less than a year. After discovering Nora was pregnant with their first child, Daniel and Nora agreed she would quit teaching to work in the home and provide home schooling for their children. While Nora was a homemaker, she also managed the couple's forty-acre ranch and a horse trail-riding business. On top of those responsibilities, Nora managed the family finances. Daniel was an over-the-road trucker. He worked sixty to eighty hours a week and earned an average annual income of $78,000.

Daniel and Nora separated in April 2016. Seven of their eleven children were still under eighteen and living at home. At first, Nora and those children stayed in the family home while Daniel lived elsewhere. Daniel eventually returned, prompting Nora to move with their seven children into her friend Amy's

home. During the separation, Daniel cut off financial support for Nora. Yet Nora continued as primary care provider for the children. Nora still collected revenue from a rental property in her name, as well as money from a family trust. But she no longer managed or received income from the trail rides.

In June 2016, Daniel took one child into his physical care. Daniel also offered Nora some economic assistance that summer, but he did not make regular or fixed payments. In fact, the help amounted to only three weekly payments ranging from $100 to $175, about one-quarter of his trucking income.

After twenty-three years of marriage, Nora petitioned for dissolution in November 2016. In spring 2017 the couple sold the forty-acre family ranch and paid down the remaining mortgage, resulting in net proceeds of $260,335. Daniel used $57,680 of his half of the proceeds to buy a new house. Nora transferred roughly $11,000 of her half into a retirement account and set aside $28,000 to pay off her credit card debt. As Daniel admitted in his testimony, Nora used some proceeds to pay $32,190 in credit card debt in his name. Nora also settled a $10,000 medical bill and $2000 owed to Samaritan Ministries. Nora saved the remainder of her share. During the dissolution proceedings, Nora supported all seven children who were still under eighteen. Because Daniel did not contribute financially until June 2017, Nora accrued roughly $9000 in credit card debt.

After a July 2017 hearing, the district court placed the five youngest children in Nora's physical care and the two oldest children with Daniel. The court also ordered Daniel to pay Nora $1256.56 per month as child support for the five children in her care. That number reflected an offset for the two children in Daniel's care.

In October 2017, the parties stipulated to custody and division of property and debts. Nora requested traditional alimony in the amount of $1500 per month. In the district court's March 2018 decree, it found Nora was entitled to rehabilitative alimony. To calculate child and spousal support, the court determined Daniel's income was $50,000 and imputed an annual income of $15,000 to Nora through August 2018, with the expectation Nora's income would increase to $28,000 in September 2018.[1] Finally, the district court awarded Nora attorney fees of $5000, on top of its previous order requiring Daniel to pay $1500 in attorney fees.

In April 2018, Nora appealed. The supreme court granted a limited remand for the district court to finalize the child and spousal support amounts. In August 2018, the district court ordered Daniel to pay $1017 in child support, reflecting the impending September adjustment in Nora's imputed income and noting his child support obligation would increase when the two older children leave his care.

When it came to alimony, the district court assessed Daniel's obligation in tandem with the child support due "[i]n an effort to stabilize the payments." The court ordered Daniel to pay no more than $1400 per month to Nora. The difference between the child support and the $1400 ceiling would be the alimony due. According to the order, if the child support owed Nora exceeded $1400 in a given month, Daniel would have no alimony obligation. The court set a ten-year duration for the rehabilitative alimony.

---

[1] After stipulating to the physical care arrangement, Daniel and Nora agreed to enroll the children in public school. The district court pegged Nora's increased earning capacity to the time when their youngest child could attend kindergarten.

Nora appeals the child and spousal support determinations, as well as the attorney fee award. She also seeks appellate attorney fees. We address Nora's claims in turn.[2]

## II. Scope and Standard of Review

Dissolution proceedings are in equity; the standard of review is de novo. *In re Marriage of Mauer*, 874 N.W.2d 103, 106 (Iowa 2016). In determining spousal support, the district court is best positioned to evaluate the needs of parties, accordingly, "we should intervene on appeal only where there is a failure to do equity." *In re Marriage of Gust*, 858 N.W.2d 402, 416 (Iowa 2015). We evaluate the award of attorney fees against a possible abuse of discretion. *In re Marriage of Erpelding*, 917 N.W.2d 235, 238 (Iowa 2018). Only if the ruling is "clearly unreasonable or untenable" will we find an abuse of discretion. *Id.*

## III. Analysis

### A. Income Evaluation

Nora foremost appeals the assessment of child and spousal support. Because the support orders hinge on the income or earning capacity of both parties, this is where our review of the record begins.

To ensure each parent adequately supports the children's needs, courts calculate each parent's obligation using the child support guidelines. Iowa Code § 598.21B(1) (2016); Iowa Ct. R. 9.3(1). The support guidelines detail a number

---

[2] In his appellee's brief, Daniel contends the combined awards of child and spousal support were excessive, the duration of the spousal support was too long, and the attorney fee award was too high. We agree with Nora's assertion that Daniel cannot challenge the support or attorney fee determinations because he did not cross appeal. *See In re Marriage of Sjulin*, 431 N.W.2d 773, 777 (Iowa 1988) (declining to increase amount of alimony because obligee did not cross appeal). Thus, we do not address his claims.

of considerations, starting with the monthly income of each parent. Iowa Ct. R. 9.14. The court establishes each parent's gross monthly income by looking to the amount "reasonably expected" from all sources. *Id.* R. 9.5. "[T]he translation of income to 'net monthly income' as defined by the guidelines is not an exact science." *In re Marriage of Kupferschmidt*, 705 N.W.2d 327, 332 (Iowa Ct. App. 2005). Taking into account the parents' adjusted income, the guidelines calculate support obligations based on the number of children involved, arriving at a share for each parent. Iowa Ct. R. 9.14(2). In circumstances like Nora and Daniel's where parents divide physical care duties, the child support calculation is offset to account for "the number of children in the physical care of the other party." *Id.* R. 9.14(4). The provider with the higher child support obligation pays the net difference. *Id.* R. 9.14(5).

By contrast, spousal support awards do not follow any set guidelines. *Mauer*, 874 N.W.2d at 108 (noting while the American Academy of Matrimonial Lawyers spousal support guidelines may provide a "useful reality check," they "are not Iowa law and therefore clearly are not binding on Iowa courts"). Outside the guideline approach, courts should give weight to the earning capacity of each spouse "as demonstrated by the historical record" when deciding the appropriate level of alimony. *Id.* at 107 (explaining courts should accord all criteria in Iowa Code section 598.21A(1) "some degree of emphasis").

*1. Daniel's Income*

As her opening salvo, Nora disputes the district court's assessment of Daniel's salary at $50,000. Nora argues the court should have averaged Daniel's income over the last five years. She points out Daniel's decision to give up his

more lucrative trucking work to begin a lower paying job at Koster Grain the week after she requested a divorce. Because his salary reduction was self-inflicted, she urges it would be more equitable to average Daniel's income over the time when he owned his own truck—which leads to an annual earning capacity of $78,000.

Contrary to Nora's suggestion, Daniel's situation does not call for income averaging. Income averaging is unnecessary if the wage earner has a steady income. *Kupferschmidt*, 705 N.W.2d at 333. Rather, income averaging may be an equitable solution when a self-employed person has a fluctuating income. *In re Marriage of Hagerla*, 698 N.W.2d 329, 332 (Iowa Ct. App. 2005) (declining to engage in income averaging when fluctuation resulted from valid change in employment).

As in *Hagerla*, averaging is not equitable here. *See id.* The district court accepted Daniel's rationale for taking a lower paying job. The court explained "he terminated his previous employment in order to spend more time with his children. The [c]ourt cannot fault him for this." We defer to that credibility finding and reject Nora's request to impute Daniel's yearly income at $78,000.

In the alternative, Nora argues Daniel can earn an annual income of $56,000 in his new job. We agree. The court's calculation of Daniel's income at $50,000 does not align with Daniel's testimony acknowledging he had the ability to earn around $56,000 per year at Koster Grain. We also reject Daniel's suggestion that his health impedes this earning capacity. The record shows he recovered from his 2011 heart attack and now has a "clean bill of health." On remand, the district court should use Daniel's $56,000 income to calculate support obligations.

*2.      Nora's Income*

Next, Nora contends the district court incorrectly imputed her income at $28,000 once their youngest child started school. The district court concluded Nora had "little income with the exception of some rental property. However, she has a teaching certificate which she has kept active. The point being, the [c]ourt may consider earning capacity when determining relative incomes." Nora argues the record contains no support for "this arbitrary assignment of earning capacity."

We agree with Nora's contention. For child support purposes, the court should not use earning capacity rather than actual earnings "unless a written determination is made that, if actual earnings were used, substantial injustice would occur or adjustments would be necessary to provide for the needs of the children or to do justice between the parties." Iowa Ct. R. 9.11(4). The district court did not make a finding that substantial injustice would result unless it calculated support based on Nora's earning capacity rather than her actual earnings. And such a finding would not find support in the record.

It is true Nora has a degree in teaching. But she has been out of the workforce for more than twenty years. *See Gust*, 858 N.W.2d at 411 ("In marriages of long duration, the historical record ordinarily provides an objective starting point for determining earning capacity of persons with work experience."). Daniel asserts Nora only needs two years to "get her teaching certificate current and get a good paying job" at least at the level of $28,000 annually. But no evidence backs his assertion. The court was not equipped to impute that level of income to Nora without hearing from vocational or other experts on the teaching opportunities in her community. *See id.*

Daniel insists Nora's income is not as minimal as it may seem. He points to the payments he made during their separation, income from her family trusts, and the $9000 she charged on family credit cards during the separation. These circumstances do not impact the evaluation of her earning capacity. Nora cared for seven children during the separation without fixed support from Daniel. She was not in a position to enhance her earning capacity. After the divorce, Nora continues to have physical care of five school-aged children.

On the record created at trial, we find it equitable to use Nora's actual income of $5000 per year (from rental payments and family trust dividends) rather than an earning capacity of $28,000 when determining child support and alimony. When married, Nora and Daniel agreed Nora would not work outside the home. Given the time she has been out of the work force and her continued duties on the home front, the district court should not have relied on Nora's earning capacity when calculating child support or determining alimony. *See In re Marriage of Bonnette*, 492 N.W.2d 717, 722 (Iowa Ct. App. 1992) (respecting payee's decision to remain at home with her children); *but see Moore v. Kriegel,* 551 N.W.2d 887, 889 (Iowa Ct. App. 1996) (declining to look at parent's wish to remain at home with the children in isolation when determining earning capacity).

To recap, the district court should have determined Daniel's annual income to be $56,000 and Nora's annual income to be $5000. Those income figures should inform the court's child support calculations on remand.

**B. Support Obligations**

Based on its income determinations for both Daniel and Nora, the district court calculated Daniel owed Nora monthly child support in the amount of $1017. The court also decided Nora was entitled to spousal support, considering "[t]he length of the marriage, the contribution towards the welfare of the children, the in-home education provided the children, and the disparity in incomes," concluding rehabilitative spousal support was "most appropriate." Then the court melded the support orders together, providing: "[i]n an effort to stabilize the payments, . . . the child support plus spousal support shall equal $1,400 for a period of ten (10) years."

Nora first attacks the alimony award, asserting: "When all of the factors under Iowa Code section 598.21A(1) are considered, it is clear the district court's failure to award traditional spousal support to Nora in a higher amount was wholly inequitable in this long-term marriage." Nora directs our attention to the following statutory criteria:

> (a) The length of the marriage.
> (b) The age and physical and emotional health of the parties.
> (c) The distribution of property . . . .
> (d) The educational level of each party . . . .
> (e) The earning capacity of the party seeking maintenance . . . .
> (f) The feasibility of the party seeking maintenance becoming self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and the length of time necessary to achieve this goal.
> . . . .
> (j) other factors the court may determine to be relevant in an individual case.

Iowa Code § 598.21A(1); *accord In re Marriage of Hansen*, 733 N.W.2d 683, 704 (Iowa 2007).

Iowa courts recognize three types of spousal support: "traditional, rehabilitative[, and] reimbursement alimony." *In re Marriage of Witherly*, 867 N.W.2d 856, 859 (Iowa Ct. App. 2015) (citing *In re Marriage of Anliker*, 694 N.W.2d 535, 540 (Iowa 2005)). These labels are not controlling; sometimes an award can serve dual purposes. *Witherly*, 867 N.W.2d at 859. But generally, the purpose of traditional, or permanent, alimony is to provide the receiving spouse with support comparable to what he or she would enjoy if the marriage continued. *In re Marriage of Hettinga,* 574 N.W.2d 920, 922 (Iowa Ct. App.1997). Meanwhile, rehabilitative alimony has an end date by which the financially dependent spouse should attain self-sufficiency. *In re Marriage of O'Rourke,* 547 N.W.2d 864, 866–67 (Iowa Ct. App. 1996).

To determine whether traditional alimony is equitable in a given case, we first focus on the length of the marriage. *Gust*, 858 N.W.2d at 410. Daniel and Nora were married for twenty-three years. And theirs was a very "traditional" marriage. "Generally speaking, marriages lasting twenty or more years commonly cross the durational threshold and merit serious consideration for traditional spousal support." *Id.* at 410–11. Moreover, "when the parties agree a spouse should stay home to raise children, the economic consequences of absence from the workplace can be substantial." *Id.* at 410.

In marriages of long duration like this one, we focus on the need and ability of the parties. *See id.* Nora has a bachelor's degree in music education from the University of Northern Iowa. But she has not worked outside the home since her marriage to Daniel, apart from a brief (lasting less than an academic year) teaching position more than twenty-three years ago. The record is also unclear about her

potential income should she wish to return to the workforce as an educator.  And under the parties' stipulated custody arrangement, Nora continues to be the primary caregiver for the couple's five youngest children.  In light of these circumstances, Nora has established a considerable need for traditional alimony.[3]

We find Nora deserves an award of traditional spousal support to continue until "the remarriage of the payee spouse, or death of either party."  *See Gust*, 858 N.W.2d at 415.  On remand, the district court should amend the decree to fix traditional spousal support at $900 per month.[4]

Also on remand, the district court should recalculate Daniel's child support obligation based on the child support guidelines and consistent with the parties' income determinations described above.  *See In re Marriage of Hoffman*, 867 N.W.2d 26, 37 (Iowa 2015).

### C. Attorney Fees

Lastly, Nora argues the district court abused its discretion in awarding only $5000 toward her trial attorney fees when she requested $20,000.  She also seeks $7500 to pay appellate attorney fees.

When deciding whether the district court properly awarded attorney fees, the key factor is the relative ability of each party to pay.  *In re Marriage of*

---

[3] Daniel claims Nora's need is insignificant because she "left the marriage with very substantial assets" and "apparently lives rent free" in the home of her partner Amy.  We find Daniel's argument unconvincing.  The parties left the marriage with comparable assets.  And Nora continues to incur the expense of raising five children.

[4] This monthly award is less than Nora requested at trial and less than the amount that a court would award under a formula developed by the American Academy of Matrimonial Lawyers.  *See* Mary Kay Kisthardt, *Re-thinking Alimony: The AAML's Considerations for Calculating Alimony, Spousal Support, or Maintenance*, 21 J. Am. Acad. Matrim. Law. 61, App. A (2008).

*Romanelli*, 570 N.W.2d 761, 765 (Iowa 1997). Similarly, when considering appellate fees, we examine the "'needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal.'" *In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005) (citing *In re Marriage of Geil*, 509 N.W.2d 147, 150 (Iowa Ct. App. 1981)). Appellate attorney fees are not a matter of right, but rest in our discretion. *Id.*

We find the district court properly exercised its discretion in awarding Nora $5000 in attorney fees. In addition, because Nora has far less income and was largely successful in challenging the support orders in the decree, we award her $5000 in appellate attorney fees. We also assess the costs of the appeal to Daniel.

**AFFIRMED AS MODIFIED AND REMANDED.**