**IN THE COURT OF APPEALS OF IOWA**

No. 20-1121
Filed February 16, 2022


**IN RE THE MARRIAGE OF LORI JEAN MCCABE
AND BRANDON ROBERT MCCABE**

**Upon the Petition of
LORI JEAN MCCABE,**
        Petitioner-Appellee/Cross-Appellant,

**And Concerning
BRANDON ROBERT MCCABE,**
        Respondent-Appellant/Cross-Appellee.
_____


        Appeal from the Iowa District Court for Floyd County, Chris Foy, Judge.


        Brandon McCabe appeals, and Lori McCabe cross-appeals, the decree

dissolving their marriage. **AFFIRMED AS MODIFIED AND REMANDED.**


        Judith O'Donohoe of Elwood, O'Donohoe, Braun, White, LLP, Charles City,

for appellant.

        Andrew C. Johnston of Laird Law Firm, P.L.C., Mason City, for appellee.


        Considered by May, P.J., Ahlers, J., and Mullins, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2022).

**MULLINS, Senior Judge.**

Brandon McCabe appeals, and Lori McCabe cross-appeals, the decree dissolving their marriage. Brandon argues the district court erred in failing to enforce the parties' premarital agreement, inequitably distributing property, calculating the amount of child support, and awarding attorney fees. Lori argues on cross-appeal that the district court erred in failing to award spousal support, a premarital property credit should not have been given, and the district court miscalculated Brandon's income for the purposes of child support.

## I.       Background Facts and Proceedings

The parties were engaged to be married in 2008. The parties discussed marrying in August, but then agreed to be married on December 4, 2008, when Lori was eight months pregnant with the couple's first child. The ceremony was cancelled because Brandon refused to get married without a premarital agreement. The parties rescheduled the ceremony for December 29. That morning, Brandon presented Lori with a form premarital agreement printed from the internet. Brandon listed his assets on Exhibit A and told Lori to complete a list of her outstanding debt on Exhibit B, although she testified she never did so. The parties signed the agreement with no further review or legal advice, it was notarized, and they were married.

The parties share four children. Over the course of the marriage, the parties accumulated two farms and sixteen residences. At the time the decree was entered, Lori moved back into the home she owned prior to the marriage and Brandon lived in the most recent marital home. The other fourteen residences are income-generating rental properties. The most recent marital home, farms, and

rental properties are owned jointly by the parties through McCabe Properties and McCabe Holdings. The parties agreed that Lori would provide childcare and care for the home while Brandon maintained employment outside the home. At the time of dissolution, Brandon maintained his employment and Lori provided in-home childcare for the couple's children and two other children.

Lori petitioned for dissolution in January 2019. Trial was held in February 2020. The parties' entered into a partial stipulation that was incorporated into the decree.[1] The court found the premarital agreement was both procedurally and substantively unconscionable and, thus, unenforceable. The district court also declined to trace any of the residential and farm properties acquired during the marriage to Brandon as premarital property and found that "[o]ther than [Lori's premarital] home, all of the real estate involved in this case is marital property and is subject to equitable division." It did, however, consider the value of premarital property as a factor in equitable distribution of the parties' property. The court awarded no spousal support. The district court found that Lori's position as the primary caregiver and continued daycare provider for the children was grounds for an upward deviation from the child support guidelines and ordered that Brandon pay $1240.00 per month in child support. Brandon was also ordered to pay $6500.00 toward Lori's attorney fees.

---

[1] The stipulation established joint legal custody and shared physical care of the children, parenting time and holiday schedules, how the parties would claim the children for tax purposes, and that Brandon would provide health insurance for the children, among other provisions not disputed on appeal.

## II. Standard of Review

"Dissolution proceedings are equitable actions, which we review de novo." *In re Marriage of Shanks*, 758 N.W.2d 506, 510 (Iowa 2008). "[I]ssues concerning the validity and construction of premarital agreements are equitable matters subject to our de novo review." *Id.* at 511. "We give weight to fact findings of the district court, particularly as to witness credibility, but are not bound by them." *Id.* "We will disturb the district court ruling 'when there has been a failure to do equity.'" *In re Marriage of Kimbro*, 826 N.W.2d 696, 698 (Iowa 2013) (quoting *In re Marriage of Schriner*, 695 N.W.2d 493, 496 (Iowa 2005)). We review an award of attorney fees for an abuse of discretion. *In re Marriage of Guyer*, 522 N.W.2d 818, 822 (Iowa 1994). Our review asks whether a ruling "rests on grounds that are clearly unreasonable or untenable." *Kimbro*, 826 N.W.2d at 698.

## III. Discussion

### A. Premarital Agreement Enforceability

Brandon argues the premarital agreement executed by the parties on the day of their marriage in 2008 is enforceable and should have been enforced. This premarital agreement is governed by the Iowa Uniform Premarital Agreement Act (IUPAA). *See* Iowa Code § 596.12 (2019). The IUPAA states, in part, that:

> 1. A premarital agreement is not enforceable if the person against whom enforcement is sought proves any of the following:
> a. The person did not execute the agreement voluntarily.
> b. The agreement was unconscionable when it was executed.

*Id.* § 596.8(1)(a), (b). On appeal, Lori argues both that she did not voluntarily execute the agreement and that it was unconscionable at the time of execution.

Because the district court found the agreement unconscionable, we will focus our analysis on the unconscionability argument.

When determining whether a premarital agreement was unconscionable at the time of execution Iowa courts rely on principles pronounced in contract law. *Shanks*, 758 N.W.2d at 514–16.

> The concept of unconscionability includes both procedural and substantive elements. Procedural unconscionability generally involves employment of sharp practices[,] the use of fine print and convoluted language, as well as a lack of understanding and inequality of bargaining power. A substantive unconscionability analysis focuses on the "harsh, oppressive, and one-sided terms" of a contract.

*Id.* at 516 (citations and quotation marks omitted). Courts consider a number of factors to determine whether a premarital agreement is procedurally unconscionable, including:

> the disadvantaged party's opportunity to seek independent counsel, the relative sophistication of the parties in legal and financial matters, the temporal proximity between the introduction of the premarital agreement and the wedding date, the use of highly technical or confusing language or fine print, and the use of fraudulent or deceptive practices to procure the disadvantaged party's assent to the agreement.

*Id.* at 517 (citations omitted). When considering substantive unconscionability "the focus . . . is upon whether 'the provisions of the contract are mutual or the division of property is consistent with the financial condition of the parties at the time of execution.'" *Id.* at 516 (citation omitted).

The record reveals that the premarital agreement had been a topic of discussion between the parties for months before the parties married in December 2008. But there was no evidence presented that the parties ever fully discussed the contents of the agreement or sought the advice of an attorney. Furthermore,

Brandon presented Lori with the agreement the day of their wedding, when Lori was eight months pregnant, and had no time to seek legal advice or properly complete Exhibit B, detailing her assets and debts.  Moreover, neither party had any legal experience to interpret the terms of the agreement, leaving important legal terms undefined, and inconsistencies and inaccuracies that would have been obvious to competent legal counsel.  Based on our review of the facts, Lori carried her burden to prove the premarital agreement was procedurally unconscionable, and therefore unenforceable.  *See* Iowa Code § 596.8(1); *Shanks*, 758 N.W.2d at 517; *In re Marriage of Gutcher*, No. 17-0593, 2018 WL 5292082, at *2 (Iowa Ct. App. Nov. 7, 2018).

## B.     Property Distribution

Brandon argues the district court's property division is wrong in multiple ways.  He argues a premarital credit given to Lori for the home she owned before the marriage was improper, the division of rental and farm properties was inequitable, and the district court failed to consider the impact the property division would have on his income.

When a court divides property due to a dissolution, "[t]he property brought to the marriage by each party" is a factor it considers in making an equitable distribution.  *Id.* § 598.21(5)(b).  An equitable division "does not require an equal division of assets."  *Kimbro*, 826 N.W.2d at 703.  Instead of making an equal division, courts consider the particular facts of each case and apply the factors in section 598.21(5).  *See id.* at 704.

### 1.     Premarital Property Credit

Brandon received a credit of $71,656.00, one-half of the present value of a Fidelity rollover IRA, to reflect his alleged net worth prior to the marriage. Lori received a credit of $15,132.00, one-half of the present equity in the home she owned prior to the marriage. Brandon argues no credit should have been given to Lori because she had a negative net worth at the time the parties were married, based on the terms of the premarital agreement. Lori argues that neither party should have received a credit for premarital property.

Iowa law "does not give credit to a party for the value of the property owned prior to the marriage. To the contrary, the property brought to the marriage by each party is only a factor to consider with the other relevant factors in determining an equitable property division." *In re Marriage of Brainard*, 523 N.W.2d 611, 616 (Iowa Ct. App. 1994). "[I]nherited property and gifts received by one spouse" are the only types of property that are not subject to equitable division. *In re Marriage of Hansen*, 886 N.W.2d 868, 871 (Iowa Ct. App. 2016) (quoting *In re Marriage of Keener*, 728 N.W.2d 188, 193 (Iowa 2007)); *but see* Iowa Code § 598.21(6) (except if refusal to divide the inherited or gifted property is inequitable to the other party or to the children).

The district court made a finding that it was equitable to award Lori "half of the present equity in [her premarital] home . . . as her separate property," and "half the present value of the Fidelity rollover IRA to Brandon as his separate property." The district court did not merely award each party the value of their premarital assets. The district court considered the premarital value of assets in its complete analysis of equitable distribution of the parties' assets. *See* Iowa Code § 598.21(5)(b). We find no inequity in the court's decision to give each party one-

half of the value of their respective premarital assets and to distribute the other half of each asset as part of the marital estate. *Brainard*, 523 N.W.2d at 616.

### 2. Distribution of Real Property

Brandon argues the district court erred in distributing all of the rental properties to Lori, while he received low-income-producing farmland and a home that is too expensive for him to maintain. He also argues the district court failed to consider the impact the distribution would have on his income. Lori argues the distribution was equitable. Both parties agree that the value the district court placed on the properties is appropriate and we will accept those values.

"Our focus is on what is equitable under the circumstances in consideration of the factors set forth in Iowa Code section 598.21(5)." *Hansen*, 886 N.W.2d at 873. "Under our statutory distribution scheme, the first task in dividing property is to determine the property subject to division. The second task is to divide this property in an equitable manner according to the enumerated factors in section 598.21 of the Iowa Code." *In re Marriage of Fennelly*, 737 N.W.2d 97, 102 (Iowa 2007) (citation omitted). The factors are:

> a. The length of the marriage.
> b. The property brought to the marriage by each party.
> c. The contribution of each party to the marriage, giving appropriate economic value to each party's contribution in homemaking and child care services.
> d. The age and physical and emotional health of the parties.
> e. The contribution by one party to the education, training, or increased earning power of the other.
> f. The earning capacity of each party, including educational background, training, employment skills, work experience, length of absence from the job market, custodial responsibilities for children, and the time and expense necessary to acquire sufficient education or training to enable the party to become self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage.

g. The desirability of awarding the family home or the right to live in the family home for a reasonable period to the party having custody of the children, or if the parties have joint legal custody, to the party having physical care of the children.

h. The amount and duration of an order granting support payments to either party pursuant to section 598.21A and whether the property division should be in lieu of such payments.

i. Other economic circumstances of each party, including pension benefits, vested or unvested. Future interests may be considered, but expectancies or interests arising from inherited or gifted property created under a will or other instrument under which the trustee, trustor, or trust protector, or owner has the power to remove the party in question as a beneficiary, shall not be considered.

j. The tax consequences to each party.

k. Any written agreement made by the parties concerning property distribution.

l. The provisions of an antenuptial agreement.

m. Other factors the court may determine to be relevant in an individual case.

Iowa Code § 598.21(5).

Brandon specifically targets the rental properties the parties own. The district court found the marital contributions of both parties to be comparable, with Brandon accepting a role making economic contributions while Lori performed roles within the family home including child care and maintaining the home. The court found "it would be most equitable for the parties to share equally in the net worth they built up during the marriage." Although Lori received rental properties that generate more income than the farms distributed to Brandon, tax records show both of the farms are generating some income. Furthermore, Brandon's income potential and history has always been significantly greater than Lori's. On our de novo review of the record, we find the district court carefully considered the factors contained in section 598.21(5), including the effect the distribution would have on

Brandon's income, in distributing the property owned by the parties. The distribution was equitable and we will not disturb it.

C.      Spousal Support

Lori argues on cross-appeal that she should have been awarded spousal support. When making a spousal-support award, courts are to consider the factors listed in section 598.21A(1). Caselaw provides "whether to award spousal support lies in the discretion of the court, that [it] must decide each case based upon its own particular circumstances, and that precedent may be of little value in deciding each case." *In re Marriage of Gust*, 858 N.W.2d 402, 408 (Iowa 2015).

Brandon and Lori were married less than ten years. Both parties are healthy and may continue to work in the foreseeable future. The property distribution granted significant income-generating property to Lori, which will supplement her childcare income and allow her to become self-supporting. Furthermore, for reasons explained below, Brandon was ordered to pay child support higher than the guidelines because Lori provides childcare for the four children, thus relieving Brandon from finding and paying for childcare on workdays when he has physical care. On our de novo review of the record, we find the district court carefully considered the statutory factors and declined to award support, which is equitable in light of the circumstances of these parties. *Id.*

D.      Child Support

Brandon argues the district court incorrectly calculated the income of each of the parties and erred in deviating from the child support award determined by the guidelines and in calculating Lori's income. Lori argues the district court erred

in calculating Brandon's income, but its decision to order Brandon to pay child support at a rate higher than the guidelines was correct.

A parent has a duty to support children financially based on the parent's ability to pay. *In re Marriage of Salmon*, 519 N.W.2d 94, 97 (Iowa Ct. App. 1994). Even though Lori has the ability to care for more children in her home, she has no plan to do so or take on the additional burdens that would be required to care for extra children. Our review of the record reveals that the district court's income calculation for Lori, adding the income from rental properties to the income she earns from in-home childcare, was an appropriate calculation of her actual income for the purposes of determining child support.

Iowa courts have used average earnings rather than a parent's actual earnings for purposes of calculating child support when that parent's income is, or has been, subject to fluctuation. *In re Marriage of Hagerla*, 698 N.W.2d 329, 332 (Iowa Ct. App. 2005). "Iowa case law supports the proposition that in the determination of child support or modification of a support order, a party may not claim inability to pay child support when that inability is self-inflicted or voluntary." *In re Marriage of Foley*, 501 N.W.2d 497, 500 (Iowa 1993) (collecting cases). The spirit of that proposition is "to prevent parents from gaining an advantage by reducing their earning capacity and ability to pay support through improper intent or reckless conduct." *Id.* Lori argues that Brandon's income fluctuates and he has expressed a desire to work less in order to spend more time with the children, meaning an average income should have been used for the child-support calculation. She also argues that the average income should have been used because Brandon lost a high-earning job due to a license suspension following an

arrest for driving while intoxicated.[2] Brandon did not deny the fact of his indiscretion, nor is there any record that his conduct was intentionally directed at reducing his ability to pay child support. We do not minimize the multitude of harms that result from impaired driving, but there is nothing in the record indicating Brandon engaged in "improper intent or reckless conduct" that would give rise to the use of an average income for the purposes of calculating child support. *Id.*

"Special circumstances can call for an adjustment up or down when necessary to do justice between the parties. Any request for variation [from the guidelines] should however be viewed with great caution." *In re Marriage of Nelson*, 570 N.W.2d 103, 108 (Iowa 1997) (citation omitted). The district court made a finding that deviation was "necessary to do justice between the parties and provide for the needs of the children." Iowa Ct. R. 9.11(2). The decision was based on the fact that, pursuant to the terms of the partial stipulation of the parties, and approved by the court, Lori would provide childcare for the parties' four children and Brandon would not be required to employ a daycare provider when he has physical care of the children but is at work. The guideline calculation for shared physical care required that Brandon pay Lori $665.00 per month. The district court considered Brandon's exhibit evidence that child care would cost him more than $850 per month, and noted that the partial stipulation of the parties required Lori to provide daycare of their children when they are in Brandon's care under the shared care arrangements.[3] Based on Lori's daycare responsibilities,

---

[2] Charges filed against Brandon were dropped, and no conviction occurred. He was released from employment because of the license suspension.
[3] We note the partial stipulation was silent on financial arrangements relating to the daycare provisions.

including providing food and other supplies, and the corresponding daycare savings to Brandon, the court concluded an economic adjustment was necessary to account for the daycare responsibilities and made findings to deviate from the guideline child support by increasing the child support by $575 per month.

On our de novo review of the record, we have several concerns about the district court's deviation from the child support guidelines to accomplish its objective. At the time of trial the children were two, seven, nine, and eleven years old. Obviously, daycare requirements vary as children age, and we are unable to discern from the record or the court's decree how, or even whether, that circumstance was factored into the calculation of $575 per month. We also note the court ordered child support adjustments as each child is no longer eligible for child support, but we are unable to determine whether there was any adjustment relating to the time each child ages out of the need for daycare, or any corresponding adjustment in the deviation amount. If such adjustment is incorporated into the district court's calculations, there is inadequate rationale to facilitate our review. Consequently, we are unable to determine whether the deviation is justifiable under the guidelines. *See* Iowa Ct. R. 9.4. Also, the evidence indicates Lori may be contemplating ceasing to be a daycare provider in the foreseeable future.

Based on the foregoing, we modify the decree to vacate the $575 per month deviation and remand to the district court for further proceedings on this limited issue. The district court has the discretion to either hold a further hearing, decide the issue on the record made, or request additional submissions from the parties. We do not retain jurisdiction.

E.     Attorney Fees

Brandon argues the district court erred in ordering that he pay $6500.00 of Lori's attorney fees.  Lori also requests an award of appellate attorney fees.

"Trial courts have considerable discretion in awarding attorney fees," which depends upon the parties' ability to pay, fairness, and reasonability.  *Guyer*, 522 N.W.2d at 822.

On appeal, Brandon admitted that the $6500.00 award was modest and he was able to pay.  He even appeared to concede the issue if we adopted his plan to redistribute the property.  The district court noted, "taking into account the child support he is obligated to pay, the after-tax income of Brandon is greater than that of Lori."  Even in the absence of adoption of Brandon's distribution plan, we defer to the sound judgment of the district court in its award of trial-attorney fees.  *Id.*

When considering a request for appellate attorney fees, we consider the same factors listed above.  *See In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005).  We also consider the merits of an appeal.  *Id.*  Brandon initiated this appeal and Lori raised her own claims on cross-appeal.  Both parties prevailed in different areas.  Brandon has already been ordered to pay some trial-attorney fees and child support at a rate higher than the guideline calculation.  Each party shall be responsible for their own attorney fees and costs on appeal shall be split equally between the parties.

## IV.     Conclusion

On our de novo review of the record, we find the parties' premarital agreement was unconscionable at the time of execution and is unenforceable. The district court's property distribution appropriately considered the value of assets

the parties brought to the marriage as a factor in its exercise of equitable distribution.  The distribution of real property was equitable.  The district court's award of child support was appropriate and equitable, but we modify the decree to vacate the upward deviation and remand to the district court for further proceedings.  Following our consideration of the property distribution, we agree that no spousal support was warranted.  We affirm the award of trial attorney fees and find each party should be responsible for their own appellate attorney fees. Costs on appeal shall be split equally between the parties.

**AFFIRMED AS MODIFIED AND REMANDED.**