# IN THE COURT OF APPEALS OF IOWA

No. 19-0785
Filed June 17, 2020

IN RE THE MARRIAGE OF TRISHA PECKOSH SERRANO
AND EMILIO BERNARDO SERRANO

Upon the Petition of
**TRISHA PECKOSH SERRANO,**
        Petitioner-Appellee,

**And Concerning**
**EMILIO BERNARDO SERRANO,**
        Respondent-Appellant.

_____

        Appeal from the Iowa District Court for Polk County, Celine Gogerty, Judge.

        A former husband appeals the custody, child support, spousal support, property division, and other issues in a dissolution decree. **AFFIRMED AS MODIFIED AND REMANDED.**

        Emilio B. Serrano, Des Moines, self-represented appellant.

        Tammy Westhoff Gentry and Adam C. Witosky of Parrish Kruidenier Dunn Boles Gribble Gentry Brown & Bergmann, LLP, Des Moines, for appellee.

        Considered by Tabor, P.J., and Mullins and Schumacher, JJ.

**TABOR, Presiding Judge.**

Representing himself on appeal, Emilio Serrano challenges several aspects of the decree dissolving his marriage to Trisha Peckosh.[1] He starts by contesting the grant of sole legal custody and physical care of their four children to Trisha. Emilio also claims the district court should not have ordered him to pay child or spousal support. And he contends the court failed to do equity in dividing the marital assets and in awarding attorney fees to Trisha. After our de novo review, we affirm on all but two grounds. We modify a visitation provision and the mandate that Emilio purchase annuities to guarantee his support payments. We also find Emilio should contribute to Trisha's appellate attorney fees but remand for the district court to determine a reasonable amount.

## I.       Facts and Prior Proceedings

Emilio was born in 1975. Trisha was born in 1977. Trisha met Emilio in 1999 while she was studying abroad in Spain. Emilio is originally from Spain but moved to Iowa a year after meeting Trisha. The couple married in Jackson County. Trisha then completed her undergraduate degree in Spanish and sociology at Iowa State University (ISU). Soon after, Emilio also enrolled at ISU and completed a degree in marketing and economics.

After graduation, they both found employment in central Iowa. Trisha worked for hawk-i Outreach in Dallas County, translating for public health nurses at vaccination clinics. Emilio worked for Wells Fargo Financial doing marketing analysis. After a year, Trisha took a job as an in-home counselor for Families First

---

[1] The decree restored Trisha Serrano to her maiden name.

Counseling Services in Des Moines. This change afforded her a more flexible schedule as the couple started a family. Trisha and Emilio now have four children: G.J.S., born 2003; M.C.S., born 2005; M.F.S., born 2008, and M.J.S., born 2012.

In 2005, the then family of four moved to Lincoln, Nebraska, so Emilio could enroll in a master's degree program. Trisha stayed home with G.J.S. and M.C.S. Two years later, the family moved back to Des Moines where Emilio started working for John Deere making about $80,000 a year. The family settled in a house on Germania Drive. Trisha stayed home to be the primary caregiver for their three children.

After the fourth child, M.J.S, was born, the family moved to a larger house on 40th Street in Des Moines. Trisha testified that during her pregnancy with M.J.S., Emilio's behavior changed. He was depressed and drank heavily. Trisha also recounted an incident in 2012 when Emilio called her dad at 11:00 p.m. and asked him to help Trisha with the first commandment. Emilio claimed Trisha was "putting the kids before God." Trisha continued to have concerns about Emilio's drinking. He was arrested for public intoxication after a work function at Prairie Meadows. He spent the night in jail without contacting Trisha. Trisha testified Emilio was angry when she picked him up the next morning, claiming she lacked empathy.

Another episode that highlighted Emilio's change in behavior followed a visit to Trisha's parents in South Dakota. On the way home, Emilio was "screaming" at one of the children for spilling on the grandparents' carpet. When Trisha asked him to calm down, he "hauled off and punched her" in front of all four children. The strike bruised Trisha's arm. Trisha's sister corroborated her description of the

bruise. Around this time, Emilio emailed Trisha's family members saying they were separating and he would move back to Spain.

Another incident occurred before Emilio moved out of the marital home. During the 2015 school year G.J.S. had trouble completing his homework. Emilio lost his temper. He was about to hit the child when Trisha intervened. Emilio interpreted Trisha's resistance as disrespect and became upset. He left and did not have contact with the family for several days. Emilio never returned to the family home and eventually bought himself a house on 45th Street in Des Moines.

After the couple separated, Trisha enrolled in a master's degree program in education to obtain a teaching job. In 2018, Trisha earned that degree and landed a position with the Des Moines Public Schools. Trisha continued her role as the primary caretaker for the four children while working full time. Meanwhile, the relationship between Emilio and Trisha continued to deteriorate. Text messages produced by the parties reflect contentious communication. The parents had trouble arranging for Emilio to visit the children.

The record also shows Emilio has a tough time keeping up with his parenting role. Emilio found it challenging to have all four children with him at once. Emilio would often return one or two children to Trisha's care before the visitation was scheduled to end. Sometimes, he would tell the children he was returning them to Trisha's home as punishment if they misbehaved. He has also shown favoritism toward one of the children over the others. The court ended overnight visitations in March 2019 because Emilio was not using those opportunities to spend time with the children.

Beyond the visitation issues, Emilio failed to recognize serious health issues impacting the children. Emilio faulted Trisha's decision to seek medical attention when one child had a potential concussion. And another child has engaged in self-harm that Trisha has worked to address on her own. Additionally, Emilio has not effectively communicated with Trisha about the children. Nor has he avoided putting them in the middle of the strife. For instance, Emilio discovered their fifteen-year-old child had been vaping yet did not tell Trisha. He also shared adult disputes with the children, to the extreme of having them read out loud from the dissolution court filings. He testified his "philosophy" was "not to hide things" but would stop sharing the details of the divorce proceedings if directed by the court. He also testified "if I don't have my family, and I don't have a way to support myself, yes, I will go back to Spain."

Turning to economic issues, Emilio has out earned Trisha since they have been married. His annual income increased from $81,759.00 in 2015 to $116,882.00 in 2018. In 2019, Emilio expected to earn $128,164.74, including a $15,000 bonus. At the end of February 2019, Emilio's IRA account had a value of $118,819.48. He received a distribution of $25,650.00 in 2016 and $19,550.00 in 2017. Through his employer, Emilio had a 401k plan, valued at $43,107 as of the end of 2018. Emilio took loans against his 401k since the separation; those loans had a balance of $18,170.65. Emilio owns $2931.65 in Wells Fargo stock. He also has $1126.60 in a John Deere credit union account and $732.11 in a Wells Fargo checking account in his name. As for debts, Emilio owes more than $42,000 on credit cards. He also owes $16,434.68 on a Subaru Forester valued at $14,000. Plus, Emilio has student loans in the amount of $15,080.25.

Trisha earns an annual salary of $46,312.00 and has an IPERS retirement account with a refund value of $1032.74, a Honda Pilot valued at $2000, and a checking account with $2427.50. She also owes more than $10,000 on her credit cards. She attributes about $4000 of that debt to keeping up with household expenses when Emilio stopped paying the family's bills.

The parties jointly own two properties: the 40th Street house and their former home on Germania. The district court determined market value for the 40th Street property as $240,000. That property had a mortgage balance of $128,465.78 and a home equity line of credit balance of $27,600. The court assessed the Germania home's value at $238,800. On that property, Emilio has received the rental income of $18,600 in 2019.

Trisha stayed in the 40th Street home and Emilio bought the 45th Street house in his name for $85,000. The house was in foreclosure and Emilio put substantial work into the property to make it habitable. Emilio contends he spent $38,000 on that property using his credit cards. The real estate was assessed at $152,500. Emilio contends the fair market value is now $140,000; the district court agreed. The mortgage balance was $105,343.12. At trial, Emilio asserted after all his expenses were paid, he was left with only $30.88 to live on. The district court did not accept his calculations and noted when Emilio submitted his expenses to the court, he counted his child support payments twice.

In the decree, the district court granted sole legal custody and physical care to Trisha. The court reasoned "it is preferable to vest decision-making power to one parent when the parties will not be able to agree on many fundamental decisions that must be made in the children's lives." In that vein, the court found

that "Trisha has long established both her ability and willingness to care for the children and possesses superior parenting skills."

On Emilio's visitation rights, the district court found "it is in the children's best interest that Emilio have reasonable visitation with the minor children according to a set visitation and holiday schedule." The court ordered M.C.S.'s therapist to be involved in the decision of whether spending time with Emilio was in her best interests. The court noted the same input should be sought from any therapist engaged for the mental health of the other children.

Next, the court addressed Trisha's need for financial support. The court ordered monthly child support of $1810 so long as the four children were under eighteen. The amount changed to $1623 for three children, $1409 for two children, and $1001 for the last child.[2] On top of child support, the district court required Emilio to pay spousal support of $1200 per month for ten years or until Trisha remarries.[3]

As part of those support orders, the district court directed Emilio to purchase two annuities with Trisha as the beneficiary. One annuity was to be "in the amount of the highest total child support award to guarantee the monthly payments of child support during the time period Emilio is required to pay child support." The other annuity was to be "in the amount of the total spousal support award to guarantee

---

[2] Those amounts will change once Emilio sells the Germania house ($1597 for four children; $1432 for three children; $1241.54 for two children; and $880.82 for the last child).

[3] If the Germania house is sold, alimony is no longer required, and one child is under the age of eighteen, then child support will be $1055.

the monthly payments to Trisha during the time period Emilio is required to pay spousal support."

In dividing the assets, the court awarded the 40th Street house to Trisha and the 45th Street house to Emilio. Emilio was to receive the rent and assume the debt on the Germania house until it was sold; the court ordered the net proceeds from the sale to be divided equally after payment of specified expenses and the home equity loan on the 40th Street property. The court also allowed Trisha to claim the two youngest children and Emilio to claim the two oldest children as deductions on their federal and state income tax returns.

Emilio appeals both the custody and economic provisions of the decree.

## II.     Scope and Standards of Review

The district court tries dissolution-of-marriage cases in equity. *In re Marriage of Larsen*, 912 N.W.2d 444, 448 (Iowa 2018). So appellate review is de novo. Iowa R. App. P. 6.907. Under that review, we give weight to the district court's fact findings, but they do not bind us. *Id.* Prior cases offer meager precedential value because equitable results hinge on the particular circumstances of the parties before us. *In re Marriage of Weidner*, 338 N.W.2d 351, 356 (Iowa 1983). We afford the district court considerable latitude in determining spousal support and will disturb that determination only when the court fails to do equity. *In re Marriage of Witherly*, 867 N.W.2d 856, 859 (Iowa Ct. App. 2015).

## III.     Analysis

## A.  Legal Custody and Physical Care

The district court granted Trisha sole legal custody and physical care of the children. Emilio contests those custody decisions.

Legal custody carries the overall responsibility of raising children and includes the right to make decisions affecting their legal status, medical care, education, extracurricular activities, and religious instruction. *See* Iowa Code

§ 598.1(5) (2018). By contrast, physical care entails the more day-to-day duty of maintaining a home for the children and providing their routine care. *Id.* § 598.1(7). The children's best interests are the primary concern in determining legal custody. Iowa R. App. P. 6.904(3)(o).

We prefer joint legal custody when that arrangement is reasonable and serves the children's best interests. Iowa Code § 598.41(1)(a); *In re Marriage of Brainard,* 523 N.W.2d 611, 614 (Iowa Ct. App. 1994). In considering whether to grant joint or sole legal custody, our courts weigh a list of statutory factors. Iowa Code § 598.41(3). These factors matter most here: (1) whether each parent would be a suitable custodian for the children, (2) whether the psychological and emotional needs and development of the children will suffer because of lack of active contact with and attention from both parents, (3) whether the parents can communicate with each other about the children's needs, (4) whether both parents have actively cared for the children before and since the separation, (5) whether each parent can support the other parent's relationship with the children, (6) whether one or both the parents agree or dispute joint custody, (7) the geographic proximity of the parents, (8) whether the safety of the children or the other parent will be jeopardized by the awarding of joint custody or by unsupervised or unrestricted visitation, and (9) whether a history of domestic abuse exists. *Id.* "[T]here is no magic number of the factors which, when satisfied, will mandate a decision for or against joint custody." *Weidner*, 338 N.W.2d at 358.

Trisha sought sole legal custody, while Emilio lobbied for joint custody. If the district court does not grant joint legal custody, it must identify clear and convincing evidence, based on those section 598.41(3) factors, showing joint legal

custody is unreasonable and not in the children's best interests. Iowa Code § 598.41(2)(b). Here, the district court declined to grant joint legal custody. The court reasoned

> The evidence in this case demonstrates convincing evidence the parties cannot be civil in making the most basic of decisions on behalf of their children and that they have disagreed several times regarding important and emergency medical care. There is also evidence of domestic violence perpetrated by Emilio against Trisha. As a result, the Court finds sole legal custody should be ordered. The Court further finds that as Trisha has long established both her ability and willingness to care for the children and possesses superior parenting skills, it is logical that Trisha have this role.

We agree with the district court's reasoning. Emilio asserts on appeal the couple has a history of "fluid and successful" communications. Yet he quickly undermines his own point by arguing that their text exchanges show Trisha should be "penalized" for not taking his input into account. Contrary to Emilio's assertion, the overriding factor weighing against joint legal custody is the inability of Emilio and Trisha to communicate in a respectful manner. "Although cooperation and communication are essential in joint custody, tension between the parents is not alone sufficient to demonstrate it will not work." *In re Marriage of Bolin*, 336 N.W.2d 441, 446 (Iowa 1983). To merit sole custody, the parents' inability to communicate and cooperate must eclipse the "usual acrimony that accompanies a divorce." *In re Marriage of Ertmann*, 376 N.W.2d 918, 920 (Iowa Ct. App. 1985). Here, the district court held, and we agree, Trisha and Emilio's communication problems are so protracted that they exceed that usual acrimony. *See id.*

Emilio next contends the district court was wrong in citing domestic violence as a reason for granting Trisha sole custody. At trial, Emilio admitted hitting Trisha and causing a bruise on a car trip with the children. But he argues the record does

not support a history of domestic violence. We agree. *See In re Marriage of Forbes,* 570 N.W.2d 757, 759–60 (Iowa 1997) (holding "a single documented incident" does not show a history of domestic abuse as the term is used in section 598.41). But even without a pattern of violence by Emilio, we agree with the district court that the children's best interests were served by granting Trisha sole legal custody of the children

Emilio has balked at making constructive decisions about the children's care in consultation with Trisha. Even more damaging, he has placed the children in the crossfire of the couple's strife. Under these circumstances, the children's best interests lie in sole legal custody with Trisha. *See generally In re Marriage of Gensley,* 777 N.W.2d 705, 715 (Iowa Ct. App. 2009) (holding sole legal custody was proper because of father's inability to communicate with the mother, and children suffered because of acrimonious relationship between parents); *In re Marriage of Liebich,* 547 N.W.2d 844, 849 (Iowa Ct. App. 1996) (affirming grant of sole legal custody to father, as mother was incapable of supporting the child's relationship with the father).

Likewise, we agree with the district court's decision to place physical care with Trisha. If joint physical care is not appropriate, "the court must choose one parent to be the primary caretaker, awarding the other parent visitation rights." *In re Marriage of Hynick*, 727 N.W.2d 575, 579 (Iowa 2007). The district court found because "Trisha had long established both her ability and willingness to care for the children and possesses superior parenting skills, it is logical that Trisha have this role." We reach the same conclusion after our de novo review. The record

shows Emilio is overwhelmed by supervising all four children at the same time. Physical care of the children should remain with Trisha.

### B. Visitation

Children's best interests ordinarily require continuing association with their noncustodial parent. *See Donovan v. Donovan*, 212 N.W.2d 451, 453 (Iowa 1973). The district court found it was in the children's best interest that Emilio have reasonable visitation but with certain conditions regarding therapy.

On appeal, Emilio claims the court erred when it ordered that M.C.S.'s therapist should have input on his visitation schedule with their daughter. The court decreed that if the therapist "provides an opinion that time alone with Emilio is contrary to M.C.S.'s mental health, or that M.C.S.'s time with her father is against M.C.S.'s best interest, then M.C.S.'s parenting time with her father will be consistent with the therapist's recommendation." Trisha does not address this visitation issue in her appellee's brief.

The district court may not delegate its judicial power to determine visitation to a third party. *See In re Marriage of Stephens*, 810 N.W.2d 523, 531 n.3 (Iowa Ct. App. 2012). But it is proper for the court to seek and consider the therapist's recommendation in any future modification of the visitation order, giving the parties the right to be heard. *See id.* Because the provision highlighted by Emilio contramands *Stephens*, we remand for modification of the decree to strike the language making visitation contingent on the opinion of the therapist.

### C. Child Support

Emilio next argues the district court erred in ordering him to pay child support to Trisha. He contends she cannot handle money so she should pay child

support to him so he can manage the children's finances. After attacking the overall order, Emilio does not dispute the district court's calculation of the amount of child support.

The district court properly used the child support guidelines in setting Emilio's obligations. *See In re Marriage of Brown*, 487 N.W.2d 331, 333 (Iowa 1992) (noting rebuttable presumption that the amount of child support determined in accordance with the guidelines is correct). We affirm the child support order.

### D. Spousal Support

Emilio also objects to the spousal support order. He contends he should not have to pay support because Trisha treated him badly and segregated him from the family. His objection is not persuasive.

Trisha requested rehabilitative alimony so she could increase her earning capacity. "Rehabilitative alimony was conceived as a way of supporting an economically dependent spouse through a limited period of re-education or retraining following divorce, thereby creating incentive and opportunity for that spouse to become self-supporting." *In re Marriage of Francis*, 442 N.W.2d 59, 63 (Iowa 1989). The district court approved her request, ordering Emilio to pay $1200 per month for ten years. We affirm that award because it achieves equity between the parties. Emilio earned a much higher income than Trisha. And Trisha spent many years not working so she could concentrate on caring for the four children. Considering these facts, we find it was appropriate for the district court to order a decade's worth of rehabilitative alimony.

**E. Annuity Orders**

On its own initiative, the district court ordered Emilio to purchase two annuities with Trisha as the beneficiary. The court intended the annuities to secure his obligations to pay the highest amount of child support and spousal support. The district court ordered the annuities after considering "Emilio's testimony concerning his financial claims and his testimony about returning to his native country of Spain." Emilio claims those orders were in error. Without support in the record, he argues he has "no possibility of being able to pay for an annuity."[4]

Trisha defends the annuity orders on appeal. She believes the annuities "are necessary to ensure Emilio's obligations are fulfilled in the face of this unique risk" that he will leave the country. In her view, Iowa Code section 598.22(6) gave the district court discretion to require "security, a bond, or other guarantee which the court determines is satisfactory to secure the payment of the support." Indeed, our court has decided that code section provides "authority to secure performance of future alimony payments by requiring adequate security or imposing appropriate liens on the obligor's property. *In re Marriage of Hettinga*, 574 N.W.2d 920, 923 (Iowa Ct. App. 1997); *see also In re Marriage of Keener*, 728 N.W.2d 188, 197 (Iowa 2007). But Trisha cites no case law, and we have found none, that requires

---

[4] Seven months after filing his notice of appeal, Emilio filed a "notice of annuity issue" in which he detailed his efforts to "find an annuity that fits the Divorce decree." He claimed, "[T]he cheapest annuity that would come closer to what is described in the decree will cost $321,231.93." Trisha moved to strike the annuity notice alleging it was untimely and "attempts to interject new issues into the appeal" that were not presented at trial. The supreme court struck the document entitled "notice of annuity" filed by Emilio.

an obligor to purchase an annuity as the only appropriate guarantee of support payments.

In our de novo review, we find the better mechanism to secure Emilio's future performance is to impose a judicial or equitable lien on his real property.[5] *See Hettinga*, 574 N.W.2d at 923. We remand for this modification of the decree.

### F. Asset and Debt Distribution

Emilio contends the district court "failed to equally divide assets and debts." In that contention, Emilio misses the core tenet of property division in dissolutions. That is, "an equitable distribution of marital property, based upon the factors in [Iowa Code section] 598.21(5), does not require an equal division of assets." *In re Marriage of Kimbro*, 826 N.W.2d 696, 703 (Iowa 2013).

The district court's first task is to identify and value all the assets subject to division. *In re Marriage of McDermott*, 827 N.W.2d 671, 678 (Iowa 2013). We will refuse to disturb that valuation if it falls within the range of permissible evidence. *See id.* at 679. On a granular level, Emilio challenges several of the court's valuations, including his IRA account, a band instrument, and a debt to Trisha's parents. We find those valuations were within the range of permissible evidence and affirm.

Emilio also argues he should be able to claim all four children as tax deductions because it is a "wasted benefit" for Trisha, given her level of income.

---

[5] A judicial or equitable lien is an "automatic lien on real estate even if the predicate conditions for a judgment lien do not exist." *Fed. Land Bank v. Boese*, 373 N.W.2d 118, 121 (Iowa 1985).

Because Emilio's claim is not adequately supported by the record, we decline to grant the relief he requests.

On another front, Emilio disputes the district court's finding that he "made no accounting or explanation for over $63,000" in withdrawals or loans from his retirement accounts. The court determined Emilio was "either hiding, depleting or diverting marital assets in an attempt to avoid an equitable distribution." On this credibility finding, we defer to the district court. *See id.* at 676. Overall, we find the distribution of assets and debts to be equitable to both parties.[6]

### G. Attorney Fees.

The district court awarded Trisha $12,500 in trial attorney fees, directing Emilio to pay $500 per month for twenty-five months. The court relied on the "large disparity in the parties' incomes." Emilio objects to that award. He claims the attorney's bill was unreasonable and the attorney "insulted" him during the trial.

The district court should base an award of attorney fees on the parties' respective needs and ability to pay. *In re Marriage of Lattig*, 318 N.W.2d 811, 817 (Iowa Ct. App. 1982). We afford considerable discretion in these awards. *In re Marriage of Schettler*, 455 N.W.2d 686, 689 (Iowa Ct. App. 1990).

Like the district court, we find Emilio has the greater ability to pay the attorney fees. We also find the attorney's rate and billable hours, reflected in her affidavit, were reasonable. Seeing no abuse of discretion, we affirm on this issue.

Trisha also seeks appellate attorney fees. Those fees are not mandatory, but rest in our discretion. *See McDermott*, 827 N.W.2d at 687. In deciding whether

---

[6] We have considered all of Emilio's arguments, whether or not directly addressed in our opinion, and find no other grounds to modify the decree.

to award appellate attorney fees, we consider the needs of the party asking for the fee shift, the other party's ability to pay, and the relative merits of the appeal. *Id.* Again, because of the disparity in incomes, as well as Trisha's success in defending the major issues raised in Emilio's appeal, we find an award of fees is appropriate. Trisha claims she is entitled to $4000 in appellate attorney fees. But because she has not provided an affidavit of appellate attorney fees with documentation to support that request, we remand with instructions for the district court to determine a reasonable amount for the award. *See In re Marriage of Sullins*, No 14-1153, 2015 WL 4935620, at *4 (Iowa Ct. App. Aug. 19, 2015).

We tax the costs of the appeal to Emilio.

**AFFIRMED AS MODIFIED AND REMANDED.**